**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David S. TAYLOR, Defendant–Appellant.**

No. 93–4116.

United States Court of Appeals, Eleventh Circuit.

July 23, 1996.

Bruce S. Harvey, Atlanta, GA, for appellant.

Roberto Martinez, U.S. Atty., Miami, FL, Richard P. Murad, U.S. Atty's Office, Ft. Lauderdale, FL, Linda Collins Hertz, Miami, FL, Suzan H. Ponzoli, Miami, FL, Robert B. Cornell, Ft. Lauderdale, FL, for appellee.

Before CARNES, Circuit Judge, and FAY and GIBSON *, Senior Circuit Judges.

CARNES, Circuit Judge:

David S. Taylor appeals his 1991 conviction and sentence on two counts of sending threatening communications through the mail in violation of 18 U.S.C. § 876. Taylor raises two issues related to his conviction, but those do not merit discussion.[1] He also raises issues related to his sentence, and those do merit discussion, although not reversal. Those sentence issues involve the United States Sentencing Guidelines ("U.S.S.G.")

---

\* Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Taylor contends the district court abused its discretion in denying his motion for continuance and erred in denying his motion to consolidate the two counts of the indictment into one. It did not.

§ 2A6.1(b)(1) enhancement for conduct evidencing an intent to carry out the threat he made; the § 3C1.1 enhancement for obstruction of justice; and the § 5K2.0 upward departure he received.

## I. BACKGROUND

This case arose out of Taylor's actions in stalking Kathleen Goldstein, his former high school girlfriend, and her family, over a period of twenty years. Taylor was indicted in 1990 on two counts of mailing threatening communications in violation of 18 U.S.C. § 876. The communications consisted of two greeting cards in which Taylor stated, among other things, that Mrs. Goldstein would be widowed and that her husband was going to die of a "cerebral vascular accident of an unknown idiopathy." A jury convicted Taylor on both counts.

The district court granted Taylor's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, but in a previous appeal of this case we reversed, reinstated the conviction, and remanded for sentencing. *United States v. Taylor*, 972 F.2d 1247 (11th Cir.1992). Because Taylor's stalking of the Goldsteins is detailed in our opinion reversing the district court's grant of Taylor's Rule 29 motion, *id.* at 1248–50, we will not repeat the facts here except where germane to our discussion.

On remand for sentencing in January 1993, the district court sentenced Taylor to 49 months' imprisonment on count 1 and 48 months' imprisonment on count 2 to run consecutively, for a total of 97 months' imprisonment. In addition, the court sentenced Taylor to three years of supervised release to follow his imprisonment and ordered him to pay a $100 special assessment. As part of Taylor's supervised release, the district court imposed as a special condition that he not have any direct or indirect contact with the victims in this case.

## II. DISCUSSION

■ "Under the Sentencing Guidelines, a district court identifies the base offense level assigned to the crime in question, adjusts the level as the Guidelines instruct, and deter-mines the defendant's criminal history category. Coordinating the adjusted offense level and criminal history category yields the appropriate sentencing range." *Koon v. United States*, —— U.S. ——, ——, 116 S.Ct. 2035, 2042, 135 L.Ed.2d 392 (1996) (citation omitted). The district court may sentence the defendant outside of that sentencing range, however, if the case is "atypical," *i.e.*, "one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." *Id.* at ——, 116 S.Ct. at 2044 (quoting U.S.S.G. Ch. 1, Pt. A, § 4(b), intro. comment. (Nov.1995)).

The district court in this case sentenced Taylor pursuant to § 2A6.1(a) of the United States Sentencing Guidelines, Guidelines Manual (Nov. 1992), which prescribes a base offense level of 12. The district court increased the offense level by six pursuant to U.S.S.G. § 2A6.1(b)(1), an enhancement based on a specific offense characteristic, because Taylor had engaged in conduct evidencing an intent to carry out the threats contained in his communications. The court added two more levels pursuant to § 3C1.1 for obstruction of justice because Taylor had repeatedly refused to provide the government with handwriting exemplars, and when he finally did, he attempted to disguise his writing. The court arrived at an adjusted offense level of 20 and determined that Taylor had a criminal history category of III. The sentencing range for an offense level of 20 with a criminal history category of III is 41 to 51 months' imprisonment. The district court did not sentence Taylor within that range, however, but instead departed upward by eight levels, which resulted in a sentencing range of 97 to 121 months' imprisonment. The court then sentenced Taylor to a total of 97 months' imprisonment.

Taylor makes the following contentions related to his sentence: (1) the district court improperly applied a six-level specific offense characteristic enhancement for conduct evidencing an intent to carry out the threats; (2) the district court erred by applying a two-level enhancement for obstruction of justice; and (3) the district court erred by applying

an eight-level upward departure to his offense level due to various aggravating factors.

■■■ "We review the factual findings underlying the district judge's decision for 'clear error,' but we review his application of the sentencing guidelines to those facts with only 'due deference.'" *United States v. Long*, 935 F.2d 1207, 1211 (11th Cir.1991) (quoting 18 U.S.C. § 3742(e)); *see also Koon*, —— U.S. at ——, 116 S.Ct. at 2046; *United States v. Page*, 69 F.3d 482, 488 n. 5 (11th Cir.1995). In the context of applying enhancements pursuant to specific offense characteristics and for obstruction of justice, this Court has held that our scope of review is *de novo*. *E.g., United States v. Hansley*, 54 F.3d 709, 715 (11th Cir.) (specific offense characteristic), *cert. denied*, —— U.S. ——, 116 S.Ct. 539, 133 L.Ed.2d 444 (1995); *United States v. Ruff*, 79 F.3d 123, 125 (11th Cir.1996) (obstruction of justice). We review a district court's departure from the applicable sentencing guideline range for abuse of discretion. *Koon*, —— U.S. at ——, 116 S.Ct. at 2043–44.

## A. ENHANCEMENT FOR CONDUCT INDICATING AN INTENT TO CARRY OUT THE THREATS

■■ The guideline for the crime of mailing threatening communications provides for an increase in the base offense level if the defendant "engaged in any conduct evidencing an intent to carry out such threat." U.S.S.G. § 2A6.1(b)(1). The guideline commentary states that the offense covers "a wide range of conduct, the seriousness of which depends upon the defendant's intent and the likelihood that [he] would carry out the threat." U.S.S.G. § 2A6.1, comment. (backg'd).

Taylor argues that we should follow *United States v. Hornick*, 942 F.2d 105 (2d Cir. 1991), *cert. denied*, 502 U.S. 1061, 112 S.Ct. 942, 117 L.Ed.2d 112 (1992), in which the Second Circuit held that only post-threat conduct evidence can be considered in determining whether to apply the § 2A6.1(b)(1) specific offense characteristic enhancement. We recently rejected the Second Circuit's rule in *United States v. Barbour*, 70 F.3d 580

(11th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996), and instead joined the Fourth, Seventh, and Ninth Circuits in holding that pre-threat conduct may be considered in determining whether to apply this enhancement. *See id.* at 586–87; *see also United States v. Hines*, 26 F.3d 1469, 1473–74 (9th Cir.1994); *United States v. Gary*, 18 F.3d 1123, 1128 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 134, 130 L.Ed.2d 77 (1994); *United States v. Fonner*, 920 F.2d 1330, 1332–33 (7th Cir.1990). We noted that this specific offense characteristic serves to distinguish cases based upon the defendant's intent and the likelihood that he will carry out the threat and stated that:

> If the defendant's acts demonstrate both that he or she intends to act on the threat and is, in fact, likely to do so, then whether those acts occurred before or after the threat should make no difference. It would make no sense to punish more severely the person who threatens to kill the President while driving to the store to purchase a gun than the person who makes the same threat on the way home from the same store.

*Barbour*, 70 F.3d at 587.

Our decision in *Barbour* recognized, however, that in order for pre-threat conduct to be probative of an intent to carry out the threat, the conduct must have had "a direct connection between the defendant's acts and his or her threat." *Id.; cf. United States v. Philibert*, 947 F.2d 1467, 1471 (11th Cir.1991) (holding enhancement not warranted where pre-threat purchase of weapon was not connected in any way to the threat). We generalized the facts in *Barbour* and came up with three "factors" that a court may consider in determining the probative value of pre-threat conduct: (1) "the proximity in time between the threat and the prior conduct;" (2) "the seriousness of the defendant's prior conduct;" and (3) "the extent to which the pre-threat conduct has progressed towards carrying out the threat." *Barbour*, 70 F.3d at 587. However, the factors discussed in the *Barbour* opinion are not exclusive, nor is any one of them necessarily essential. *See, e.g., In re United States*, 60 F.3d 729, 731 (11th Cir. 1995) ("'The holding of [a prior case] and,

therefore, its binding power as precedent, comes not from what the opinion says or its words imply, but from what [that prior case] decided considering the facts then before the court.'" (quoting *New Port. Largo, Inc. v. Monroe County*, 985 F.2d 1488, 1500 (11th Cir.) (Edmondson, J., concurring), *cert. denied*, 510 U.S. 964, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993))), *cert. denied*, — U.S. —, 116 S.Ct. 828, 133 L.Ed.2d 770 (1996). The essential inquiry for § 2A6.1(b)(1) purposes is whether the facts of the case, taken as a whole, establish a sufficiently direct connection between the defendant's pre-threat conduct and his threat. We conclude that the facts of this case do establish a direct connection between Taylor's pre-threat conduct and his threat.

■ The facts reported in Taylor's presentence investigation report ("PSR"), which the district court adopted for purposes of sentencing, show that despite the Goldsteins' repeated attempts to evade Taylor by moving twice and changing their telephone number three times, Taylor managed to locate them every time. Over the years, Mr. Goldstein had observed Taylor conducting surveillance of his home, and many of Taylor's letters described the Goldsteins' activities in a detail that seemed to indicate first-hand observation. Moreover, although she later denied it, Taylor's former wife told the FBI that, in addition to the letters Taylor sent to the Goldsteins, he had called them numerous times, had taken several personal trips to Florida, and had even hired a private investigator to obtain information about them. She also told the FBI that sometime in 1982 Taylor went to Florida armed with a handgun, and that upon his return to their home in Nevada, he told her that he had located the Goldsteins and had had an opportunity to shoot David Goldstein, but had chosen not to do so. The best evidence of Taylor's intent to carry out his threats is information the FBI received from his former cellmate that sometime before July 1989 Taylor had solicited him to murder David or Kathleen Goldstein, or both. The threats for which Taylor was convicted occurred around Christmas of 1989. *United States v. Taylor*, 972 F.2d at 1249.

All of the pre-threat conduct in this case that the district court relied upon for this enhancement was specifically connected to the threatened parties, and it was serious. The facts taken as a whole show a sufficiently direct connection between the pre-threat conduct and the threats for purposes of § 2A6.1(b)(1). Accordingly, the district court's application of the six-level enhancement for conduct evidencing an intent to carry out the threat was proper.

**B. ENHANCEMENT FOR OBSTRUCTION OF JUSTICE**

■ Taylor's PSR indicates that Taylor was served with a grand jury subpoena on June 22, 1990, that required him to provide handwriting exemplars, but he refused to comply with that subpoena. On July 9, 1990, Taylor returned to the FBI office with his attorney, who advised him to comply with the subpoena, which he began to do. However, after having given a few handwriting exemplars, Taylor decided not to comply, picked up the exemplars he had completed, and left. Taylor never turned those exemplars over to the FBI.

On December 6, 1990, Taylor was ordered by a magistrate judge to provide handwriting exemplars, and again he refused. Taylor continued to refuse to comply with the court order until February 12, 1991, when he finally provided exemplars. Those exemplars were of no use to the government, however, because, according to the government's handwriting expert, Taylor attempted to disguise his natural handwriting while giving the exemplars.

An enhancement under § 3C1.1 is warranted "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Taylor argues that he did not obstruct justice by refusing to provide handwriting exemplars, because he freely admitted that he had written cards and letters to the Goldsteins. The record reflects, however, that although Taylor generally admitted having written cards and letters to the Goldsteins, he did not specifically admit having written the

cards that were the subject of the indictment. Accordingly, in order to prove its case, the government had to authenticate the threatening cards by matching Taylor's handwriting to the handwriting on those cards. The government was not able to use the exemplars Taylor eventually provided to authenticate the threatening cards; instead it used Taylor's signature on the fingerprint card which was made when he was arrested.

Taylor's repeated refusals to supply handwriting exemplars, and his effort to disguise his handwriting when he did supply them, constitute an attempt to impede the prosecution of this case. *See United States v. Ruth,* 65 F.3d 599, 608 (7th Cir.1995) (upholding obstruction of justice enhancement where defendant twice refused to comply with court order to provide handwriting exemplars), *cert. denied,* — U.S. —, 116 S.Ct. 1548, 134 L.Ed.2d 651 (1996); *United States v. Yusufu,* 63 F.3d 505, 514–15 (7th Cir.) (upholding obstruction of justice enhancement where defendant supplied disguised handwriting exemplars), *cert. denied,* — U.S. —, 116 S.Ct. 578, 133 L.Ed.2d 501 (1995); *United States v. Valdez,* 16 F.3d 1324, 1335 (2nd Cir.1994) ("[T]here are few better examples of a classic obstruction of justice than a defendant who refuses to give handwriting samples when compelled by a subpoena."), *cert. denied,* — U.S. —, 115 S.Ct. 60, 130 L.Ed.2d 18 (1994); *United States v. Reyes,* 908 F.2d 281, 290 (8th Cir.1990) (upholding enhancement where defendant refused to comply with court order to provide handwriting exemplars), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991).

Moreover, the fact that the government eventually managed to find a way around Taylor's disguised handwriting exemplars to prove its case does not affect our conclusion that Taylor's actions warrant an enhancement for obstruction of justice. *See Yusufu,* 63 F.3d at 515 ("A defendant's mere attempt to obstruct the government's case is sufficient to qualify him for the obstruction increase."); *Valdez,* 16 F.3d at 1335 (upholding enhancement for obstruction of justice where defendant tried, but failed, to disguise handwriting: "[The defendant's] disguise of his handwriting made difficult the comparison of

his writing with that in the [evidence] seized by the government, thus hindering the government in its investigation."). Therefore, the district court's application of the a two-level obstruction of justice enhancement to Taylor's offense level was proper.

■ Taylor further contends that, even if the enhancement is applicable, the district court did not follow the proper procedure in applying it. Under *United States v. Alpert,* 28 F.3d 1104 (11th Cir.1994) (en banc), in order to permit meaningful appellate review, a district court applying the obstruction of justice enhancement must specifically state what the defendant did, why that conduct warranted the enhancement, and how that conduct actually hindered the investigation or prosecution of the offense. The government does not dispute the *Alpert* requirements, but instead argues that in this case the record clearly provides the basis for the obstruction of justice enhancement. We agree.

Although the district court did not make individualized findings regarding the obstruction of justice enhancement, the record clearly reflects the basis for the enhancement and supports it; a remand is not necessary. *E.g., United States v. Withrow,* 85 F.3d 527, 531 n. 1 (11th Cir.1996) (declining to remand where record supported sentence imposed even though the court had not made findings of fact as to enhancement); *see also generally United States v. Jones,* 52 F.3d 924, 927 (11th Cir.) (holding that "[n]o remand is necessary ... [where] no additional facts need be developed, and any district court decision of the issue would be reviewed *de novo*...."), *cert. denied,* — U.S. —, 116 S.Ct. 265, 133 L.Ed.2d 187 (1995); *United States v. Ismond,* 993 F.2d 1498, 1499 (11th Cir.1993) ("If the court does not make individualized findings, the sentence may nevertheless be upheld if the record supports the amount of drugs attributed to a defendant."); *United States v. Wise,* 881 F.2d 970, 973 (11th Cir.1989) (affirming district court's sentence, even though court failed to make individualized findings regarding quantity of drugs, where record supported sentence imposed).

## C. UPWARD DEPARTURE FOR FACTORS NOT CONSIDERED BY SENTENCING COMMISSION IN FORMULATING OFFENSE GUIDELINE

 The district court in this case applied an eight-level upward departure to Taylor's offense level. A district court may impose a sentence outside the range established by the Sentencing Guidelines if the court finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West 1985 & Supp. 1996); U.S.S.G. § 5K2.0. With the exception of a handful of factors that may never serve as a basis for departure, the Sentencing Commission did not "limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." *Koon*, —— U.S. at ——, 116 S.Ct. at 2044 (quoting U.S.S.G. Ch. 1, Pt. A § 4(b), intro. comment.). The Sentencing Commission did provide non-exhaustive examples of encouraged and discouraged factors for use as bases for departure.

 In *Koon v. United States*, the Supreme Court recently announced the proper standard of review for courts of appeals to employ in reviewing district court departure decisions. That decision holds that courts of appeals must review departures from the sentencing guidelines under the abuse of discretion standard. Before *Koon*, we had described our standard of review as being partially *de novo*. We said that it was *de novo* insofar as the analysis involved the legal question of whether a factor is a proper basis for departure from the sentencing guidelines. *E.g.*, *United States v. Price*, 65 F.3d 903, 910 (11th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996). In *Koon*, the Supreme Court preferred to describe the proper standard of review this way:

> [W]hether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point. Little turns, however, on whether we label review of this particular question abuse of discretion or *de novo*, for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law. That a departure decision, in an occasional case, may call for a legal determination does not mean, as a consequence, that parts of the review must be labeled *de novo* while other parts are labeled an abuse of discretion. The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.

—— U.S. at ——, 116 S.Ct. at 2047 (citations omitted).

The *Koon* opinion also provides the following analysis for determining whether a departure from the applicable guidelines range is warranted:

> 1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?
>
> 2) Has the Commission forbidden departures based on those features?
>
> 3) If not, has the Commission encouraged departures based on those features?
>
> 4) If not, has the Commission discouraged departures based on those features?

... If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out

of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent.

*Koon,* ——— U.S. at ———, 116 S.Ct. at 2045 (citations and internal quotation marks omitted).

Taylor contends that the method the district court used to determine the appropriate departure in this case was flawed, and that the amount of the departure itself was unreasonable. Taylor makes two arguments about the method that the district court should have employed in applying an upward departure: (1) the district court should have better explained the basis or bases for its upward departure; and (2) the court should have engaged in a colloquy with Taylor about whether each incremental offense level would be an inadequate departure and why the eight-level increase that it ultimately applied was an adequate departure. We disagree.

· The district court imposed the eight-level upward departure after considering the PSR and after hearing from counsel, the victims, and the defendant. The court noted that the commentary to § 2A6.1 expressly provides that mailing threatening communications is an offense with a "particularly wide range of conduct," and that it practically invites departure by stating that "[f]actors not incorporated into the guideline may be considered by the court in determining whether a departure from the guidelines is warranted," U.S.S.G. § 2A6.1, comment. (n. 1).

 In justifying its upward departure, the district court identified the following factors as taking this case out of the "heartland": the defendant's harassment, culminating in the threatening communications, spanned twenty years; the degrading nature of some of the communications and actions by the defendant resulted in public embarrassment to the victims; and the harassment persisted even though federal and state court judges had ordered the defendant to desist.

The Sentencing Commission has not ruled out as bases for departure any of the factors the district court relied upon.[2] Two of the factors relied upon by the court—that the harassing conduct spanned twenty years, and that it resulted in public embarrassment to the victims—are arguably encouraged as a basis for an upward departure under U.S.S.G. § 5K2.8. That section provides, "[i]f the defendant's conduct was *unusually* heinous, *cruel,* brutal, *or degrading to the victim,* the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include … *prolonging of pain or humiliation.*" U.S.S.G. § 5K2.8 (emphasis added).

Taylor admits to writing approximately one thousand cards and letters to the Goldsteins over the span of twenty years. That averages out to approximately one harassing card or letter every week for twenty years. In addition, Taylor repeatedly engaged in behavior designed to embarrass and humiliate the Goldsteins: he wrote letters to Kathleen Goldstein's employer; he sent a stripper to the school where Mr. Goldstein worked as a principal; and he offered the Goldsteins' neighbors money to send Taylor pictures of the Goldsteins, offering to pay more if the neighbors could procure nude photos of the Goldsteins together. In short, we believe that Taylor's prolonged, unrelenting behavior, much of which was designed to humiliate the Goldsteins, does take this case out of the heartland of cases considered by the Sentencing Commission in formulating § 2A6.1. Therefore, the district court did not abuse its discretion in basing an upward departure on this factor. *Accord United States v. Moyano,* No. 91–5605, 983 F.2d 236 (11th Cir. Dec. 28, 1992) (per curiam) (unpublished) (departure under § 5K2.8 warranted based on hundreds of communications over four-year period); *United States v. Gary,* 18 F.3d 1123, 1130 (4th Cir.) (departure under § 5K2.8 based in part on frequency and duration of harassing and threatening communications

---

**2.** The factors that the Sentencing Commission has forbidden as bases for departure are: race, sex, national origin, creed, religion, socio-economic status, U.S.S.G. § 5H1.10, economic hardship, lack of guidance as a youth, U.S.S.G. § 5H1.12, and drug or alcohol dependency, U.S.S.G. § 5H1.4. *See Koon,* ——— U.S. at ———, 116 S.Ct. at 2044.

over two year period), *cert. denied,* —— U.S. ——, 115 S.Ct. 134, 130 L.Ed.2d 77 (1994).

The other factor relied upon by the district court for the upward departure—that the defendant violated several federal and state court orders requiring him to refrain from communicating with the Goldsteins—is neither encouraged nor discouraged in the guidelines as a basis for departure. Although we are mindful that departures based on factors not mentioned in the guidelines will be infrequent, we believe this case is consistent with "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole." *Koon,* —— U.S. at ——, 116 S.Ct. at 2045 (citation and internal quotation marks omitted).

Taylor had been convicted of conspiracy and mail fraud in the United States District Court for Nevada in 1984, and as a special condition of his probation, Taylor was forbidden from contacting the Goldsteins, either directly or indirectly. In November 1985, Taylor violated the court's order by contacting Kathleen Goldstein, and United States District Judge Howard McKibben revoked Taylor's probation. Taylor served 120 days in the custody of West Glen Community Treatment Center in relation to that revocation. Then in July 1986, Taylor again violated the court's order by writing a card to Kathleen Goldstein, so United States District Judge Paul Plunkett revoked Taylor's probation and sentenced him to six months' incarceration in a correctional medical facility. Taylor again violated his probation by contacting the Goldsteins in March 1988, which resulted in another revocation of his probation and a sentence of thirteen months' incarceration, which the court suspended. In 1989, Taylor contacted the Goldsteins yet again, which resulted in still another revocation of probation and another sentence, which the court required Taylor to serve.

Taylor four times violated a federal district court's order to refrain from communicating with the Goldsteins.[3] In addition, the Goldsteins had obtained a restraining order in the Broward County Circuit Court to prevent Taylor from contacting them. Taylor's repeated violation of that restraining order resulted in a warrant being issued for his arrest. Taylor's flagrant and continuous disregard of the federal and state court orders constitutes an aggravating factor that makes this case atypical, *i.e.,* takes it out of the heartland of cases the Sentencing Commission considered in formulating § 2A6.1, and the district court's reliance on that factor was not an abuse of discretion.

 As for Taylor's argument that the district court should have systematically considered each departure level leading up to the eight-level departure that it ultimately applied, we hold that no such mechanical exercise is required under the guidelines or under our case law. This Court makes a distinction between "horizontal" and "vertical" upward departures. *See generally United ed States v. Maurice,* 69 F.3d 1553, 1558 (11th Cir.1995). Horizontal departures are increases or decreases based on the relevant criminal history category applicable to the defendant. *E.g., United States v. Mogel,* 956 F.2d 1555, 1558 (11th Cir.), *cert. denied,* 506 U.S. 857, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992). Vertical departures are increases or decreases based on the offense level. *Id.*

When the district court finds that the defendant's criminal history category does not adequately reflect the seriousness of his past crimes, it may upwardly depart horizontally by assigning the defendant a higher criminal history category. U.S.S.G. § 4A1.3. In so doing, however, the court must "discuss each category it passes over en route to the category that adequately reflects the defendant's past criminal conduct." *United States v. Dixon,* 71 F.3d 380, 382 (11th Cir.1995). If the court reaches the highest criminal history category on the chart—category VI—and the court still finds that the category does not adequately reflect the seriousness of the defendant's past crimes, the court may then depart by moving vertically along the chart

---

**3.** Although some of these violations resulted in revocation of Taylor's probation, neither the PSR nor the district court assigned points to Taylor's criminal history category for those revocations.

Thus, Taylor's violations of the courts' orders were not already taken into account by the court in arriving at his criminal history category prior to applying the upward departure.

948

to a higher offense level, and hence a higher imprisonment range. *Id.* In *Dixon,* we held that once a sentencing court begins the vertical departure on the guidelines chart, it "need not explicitly discuss [its] reasons for bypassing incremental offense level sentencing ranges." *Id.* at 383; *see also United States v. Little,* 61 F.3d 450, 454 (6th Cir. 1995) ("A court is not required to move only one level, or to explain its rejection of each and every intervening level." (citation and internal quotation marks omitted)), *cert. denied,* — U.S. —, 116 S.Ct. 954, 133 L.Ed.2d 877 (1996); *United States v. Thomas,* 24 F.3d 829, 833 (6th Cir.) ("We reject such a mechanistic approach to departures."), *cert. denied,* — U.S. —, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994); *United States v. Thomas,* 6 F.3d 960, 961 (2d Cir.1993) ("To arrive at a reasonable sentence when an upward departure is justified, the fair administration of our criminal law requires from judges no such false exactitude.").

Although the vertical departure in this case was not based on the seriousness of Taylor's past crimes justifying a criminal history ranking above a category VI, there is no good reason why the same rule should not apply in the context of other vertical departures. We are aware of no decision of this or any other court that requires a sentencing court to discuss incremental levels for *vertical* departures. Indeed, the Second Circuit has explicitly stated that a district court need not discuss every intervening level in order to justify a vertical upward departure based on aggravating circumstances. *United States v. Deutsch,* 987 F.2d 878, 887 (2d Cir.1993) ("Thus, this Circuit requires a step-by-step procedure for horizontal departures under Section 4A1.3, but not for vertical ones under Section 5K2.0."); *see also United States v. Campbell,* 967 F.2d 20, 26 (2d Cir. 1992) ("[M]echanical level-by-level review of the extent of the [vertical] upward departure [is] unnecessary where the district judge gave appropriate reasons for the extent of the chosen departure." (citation and internal quotation marks omitted)). We agree with and adopt the position of the Second Circuit on this issue.

Finally, we reject the defendant's argument that the amount of the district court's departure was unreasonable in this case. The statutory maximum sentence the defendant could have received was ten years, or 120 months. The sentence imposed by the district court was well under the statutory maximum. In view of all the circumstances, we conclude that the amount of the district court's upward departure was reasonable and not an abuse of discretion. *See, e.g., United States v. Nilsen,* 967 F.2d 539, 546 (11th Cir.1992) (holding that extent of upward departure was reasonable where sentence imposed was lower than statutory maximum), *cert. denied,* 507 U.S. 1034, 113 S.Ct. 1856, 123 L.Ed.2d 478 (1993); *United States v. Dempsey,* 957 F.2d 831, 834 (11th Cir.) (same), *cert. denied,* 506 U.S. 884, 113 S.Ct. 241, 121 L.Ed.2d 175 (1992).

### III. CONCLUSION

We AFFIRM the defendant's conviction and sentence.