[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11558
Non-Argument Calendar

_____

D. C. Docket No. 03-00288-CR-T-23-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GENEVA ELLWOOD,
THOMAS HEROLD,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(July 11, 2006)**

Before ANDERSON, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Defendants Geneva Ellwood and Thomas Herold appeal their convictions and sentences imposed after a jury found them guilty of conspiring to possess with intent to distribute certain controlled substances in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and (iii), 846. Ellwood, who was found guilty of conspiring to possess with intent to distribute 50 grams or more of cocaine base ("crack"), argues that the evidence was insufficient to support her conspiracy conviction, while Herold, who was found guilty of conspiring to possess with intent to distribute 5 kilograms or more of cocaine, challenges the district court's denial of his motion for judgment of acquittal based on the conjunctive wording of the indictment.

Ellwood received a 360-month sentence while Herold received a sentence of 210 months. Both make constitutional challenges to their sentences based on United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Ellwood also challenges her sentence based on the drug quantity the district court used to determine her base offense level, the lack of a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2, and reasonableness grounds. Herold challenges the propriety of the obstruction of justice enhancement pursuant to U.S.S.G. §3C1.1 and asserts that the district court, in sentencing him, improperly imputed a quantity of crack to him in addition to cocaine.

We first address each defendant's challenge to their conviction, and then turn to their sentencing arguments.

## I.

### (a) Ellwood's sufficiency challenge

On appeal, Ellwood argues that there was insufficient evidence to support her conspiracy conviction because evidence showed only that she bought drugs, not that she had entered into an agreement with anyone to distribute drugs or sold drugs for profit. We review de novo a preserved sufficiency-of-the-evidence challenge, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." United States v. Fulford, 267 F.3d 1241, 1244 (11th Cir. 2001). A conviction must be upheld, "unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999). As a general rule, jury credibility determinations are upheld on appeal, and may only be overturned if incredible as a matter of law. Id. For testimony to be deemed incredible as a matter of law, "'it must be unbelievable on its face,' i.e., testimony as to 'facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.'" United States v. Rivera, 775 F.2d 1559,

3

1561 (11th Cir. 1985) (citation omitted).

"In order to prove a drug distribution conspiracy, the government must establish beyond a reasonable doubt: (1) the existence of an agreement among two or more persons; (2) that the defendant knew of the general purpose of the agreement; and (3) that the defendant knowingly and voluntarily participated in the agreement." United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000). The agreement and participation in the conspiracy need not be explicit and may be inferred from circumstantial evidence. United States v. Prince, 883 F.2d 953, 957 (11th Cir. 1989). A defendant may be found guilty of conspiracy notwithstanding that she did not know all the details of the conspiracy or played only a minor role in its total operation; although existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of conspiratorial agreement, where the buyer knowingly assumes a role instrumental to the success of the conspiracy, a jury may properly infer that she is a member of it. United States v. Bascaro, 742 F.2d 1335, 1359 (11th Cir. 1984).

It is unlawful for an individual to knowingly possess a controlled substance with the intent to distribute it. 21 U.S.C. § 841(a). In order to prove possession of drugs with intent to distribute, the government must establish that the defendant knowingly possessed drugs and intended to distribute them. United States

4

v. Lopez-Ramirez, 68 F.3d 438, 440 (11th Cir. 1995).

An abundance of evidence supports Ellwood's conviction. First, an agreement to possess with intent to distribute crack existed between Michael Arline, the head of a large drug ring, and Ellwood, as illustrated by Arline's trial testimony about his selling relationship with Ellwood. He testified that he sold her crack on a daily basis during the five-week period of the wiretap of his telephone. This testimony is corroborated by Ellwood's numerous phone calls to Arline, and undercover narcotics agent Steve Staklinski's testimony that Ellwood voluntarily told him of her frequent purchases from Arline. Testimony also established that Ellwood bought crack from others who obtained it from Arline.

The evidence at trial showed an intent to distribute on the part of Ellwood and Arline's awareness of this. Arline testified that Ellwood told him she gave the crack she bought to her friends, and sometimes placed two orders with him. Phone calls played to the jury corroborated this evidence of placing two orders. Furthermore, Arline testified to specific incidents where a jury could infer an intent to distribute. The testimony of John Whitmore, another member of the drug conspiracy, revealed that he had sold Ellwood crack at her apartment and she had collected money from people there and handed that money to Whitmore.

It can be inferred from the circumstances of Ellwood's dealings with Arline

5

that she knowingly and voluntarily joined the conspiracy. Arline testified that, in payment for drugs, Ellwood would steal things that he wanted including jewelry, televisions, and computers. Arline characterized Ellwood as one of his best customers because she got him what he needed and saved him money because he did not have to spend cash. Furthermore, Arline testified that Ellwood offered the services of one of her friends in exchange for crack. Even assuming that she herself did not make a profit, she still knowingly contributed to the conspiracy's success by stealing specific items for Arline.

Viewing the evidence in a light most favorable to the government, the evidence is sufficient to sustain Ellwood's conspiracy conviction, and we affirm as to this issue. See Chastain, 198 F.3d at 1351.

**(b) Herold's sufficiency challenge**

On appeal, Herold argues that because the indictment was worded in the conjunctive and included both cocaine and crack, the government was required to prove that he was involved with both drug types, but that it only proved his involvement with cocaine. Herold moved for a judgment of acquittal at the conclusion of the government's case in chief. After the government rested its case, however, Herold presented evidence and did not renew his motion for judgment of acquittal at the close of all the evidence. A defendant's decision to present his case

6

after denial of a motion for judgment of acquittal operates as a waiver of his objection to the denial of his motion for acquittal. United States v. Williams, 144 F.3d 1397, 1402 (11th Cir. 1998). Because Herold did not renew his motion at the close of all the evidence, we will affirm his conviction absent a miscarriage of justice. United States v. Tapia, 761 F.2d 1488, 1491-92 (11th Cir. 1985). Such a miscarriage requires "a finding that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." Id. (citation omitted).

When an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means. United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000). "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." United States v. Rivera, 77 F.3d 1348, 1351 (11th Cir. 1996) (quoting Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970)). The use of the conjunctive in an indictment does not change the essential elements of the offense or the government's burden of proof. United States v. Corona, 849 F.2d 562, 563 n.2 (11th Cir. 1988).

The government was not required to prove both cocaine and crack dealing in order to convict Herold, but was only required to prove a conspiracy under § 841,

7

which sets forth a complete substantive drug offense without reference to drug type. Thus, a defendant can violate § 841 in many ways and the indictment in the instant case set forth only two. The government could obtain a valid conviction on proof of a conspiracy involving only one drug type. See Simpson, 228 F.3d at 1294. The use of the conjunctive in the indictment did not require the government to prove nor the jury to find that Herold conspired to possess with intent to distribute both cocaine and crack. Therefore, the jury's verdict must stand if the evidence is sufficient to prove at least one of these offenses, and here, the evidence is more than sufficient to demonstrate Herold's participation in the cocaine conspiracy, as Herold concedes on appeal. Testimony from numerous individuals and phone calls from Herold to Arline also illustrated Herold's cocaine distribution. Therefore, the district court's denial of Herold's motion for judgment of acquittal did not result in a miscarriage of justice.

Even assuming that the government needed to prove that the conspiratorial agreement included both cocaine and crack, the district court did not err in denying Herold's motion for judgment of acquittal with respect to crack because a jury could infer Herold's involvement as to crack based on the trial evidence. Witnesses testified that Herold had cooked cocaine into crack in their presence. Thus, the jury's verdict is supported and the district court committed no error.

8

## II.

### (a) Booker challenge

On appeal, Ellwood argues that the district court erred in using the 245-gram drug quantity from the presentence investigation report (PSI) because the jury did not find it and she did not admit it. She also maintains that, after United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the district court was limited to using the amount found by the jury. Herold argues that the district court violated his Sixth Amendment right to a jury trial when it unilaterally determined that he obstructed justice.

Because Ellwood objected to the use of the drug quantity below based on the jury finding, she has sufficiently preserved her Booker objection. See United States v. Dowling, 403 F.3d 1242, 1245 (11th Cir.), cert. denied, 126 S.Ct. 462 (2005) (holding that to preserve a Booker constitutional claim for appellate review, a defendant can refer to the right to have a jury decide a disputed fact or raise a challenge to the role of the judge as a factfinder with regard to sentencing). Thus, we review her challenge de novo. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). While Herold objected to the obstruction of justice enhancement below and acknowledged that under Booker, the application of the enhancement was in the court's discretion, it is unclear whether this sufficiently preserved his

9

constitutional Booker argument for appellate review. However, we need not reach this issue as Herold's argument fails under either de novo or plain error review.

With regard to Booker constitutional errors, an individual's Sixth Amendment right to a jury trial is violated where a judge enhances an individual's sentence based solely on judicially found facts under a mandatory guidelines system. Paz, 405 F.3d at 948. "The constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is in the mandatory nature of the guidelines once the guidelines range has been determined." United States v. Shelton, 400 F.3d 1325, 1331 (11th Cir. 2005). Extra-verdict enhancements under an advisory guidelines system are permissible. See United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005) (noting that Booker specifically provides for extra-verdict enhancements in all future sentencings and that the same extra-verdict enhancement provisions apply after Booker as before).

No Booker error is present here because the drug quantity attributable to Ellwood and Herold's obstruction of justice enhancement were determined under advisory guidelines. See Shelton, 400 F.3d at 1331 (noting that constitutional error is in the mandatory nature of the guidelines once the guidelines range has been determined). Thus, the district court was allowed to find a drug quantity beyond

the amount found in the jury verdict and that Herold obstructed justice.

**(b) Drug quantity**

Ellwood argues that the trial testimony did not establish the 245-gram quantity attributed to her. Generally, we review the drug quantity attributable to a defendant found by the district court for clear error. United States v. Zapata, 139 F.3d 1355, 1357 (11th Cir. 1998). However, because Ellwood did not object to the drug quantity below on factual or sufficiency grounds, we review her challenge for plain error. United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000). We will, in our discretion, correct plain error where there is (1) error, (2) that is plain, and (3) that affects substantial rights, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005) (internal citations and quotations omitted). We note that the outcome would be the same under either standard.

"Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." Zapata, 139 F.3d at 1359. "In estimating the quantity of drugs attributable to a defendant, a court may base its computation on evidence showing the average frequency and

amount of a defendant's drug sales over a given period of time." United States

v. Frazier, 89 F.3d 1501, 1506 (11th Cir. 1996). Additionally, "the court could

consider any information, including reliable hearsay . . . so long as the defendant

has 'the opportunity to rebut the evidence or generally to cast doubt upon its

reliability.'" United States v. Query, 928 F.2d 383, 385 (11th Cir. 1991) (quotation

omitted).

The district court did not err in using the 245-gram amount determined by

the probation officer because the evidence presented at trial supported such a

finding. Arline testified that Ellwood bought crack from him on at least a daily

basis for a five-week period and that he typically gave Ellwood seven grams at a

time, though sometimes this amount was more and sometimes less. Agent

Staklinski also testified that Ellwood herself told him that she purchased between

$300 and $400 of crack on a more than daily basis from Arline. The district court

was permitted to make its computation on the average frequency and amount of

Ellwood's purchases over this period. See Frazier, 89 F.3d at 1506. The extensive

testimony from Arline about the frequency and extent of Ellwood's purchases is

not merely speculative, and the 245-gram quantity was conservative considering

that the amount was limited to the five-week period of the wiretap, even though

Arline testified to selling crack to Ellwood outside of this period. Ellwood had

12

opportunity to rebut the quantity or attack Arline's credibility during trial, but failed to do so nor did she object to the PSI's characterization of her frequency of purchasing. Thus, the evidence supports the district court's drug quantity finding and we affirm in this respect.

### (c) Mitigating role adjustment

Ellwood argues that the district court erred in denying her a role adjustment because it found that others involved in the conspiracy were more culpable than she was. We review a sentencing court's determination of a defendant's role in an offense for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The proponent of the downward adjustment always bears the burden of proving the mitigating role in the offense by a preponderance of the evidence. Id. at 939.

The Sentencing Guidelines permit a court to decrease a defendant's offense level by four levels if it finds that the defendant was a "minimal participant" or two levels if it finds that the defendant was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group," U.S.S.G. § 3B1.2, cmt. n. 4, while a minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal," U.S.S.G. § 3B1.2,

13

cmt. n. 5.

In determining whether a mitigating role adjustment is warranted, a district court first must evaluate the defendant's role in the relevant conduct for which she has been held accountable at sentencing. De Varon, 175 F.3d at 940. In looking at relevant conduct, "the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating her base offense level." Id. at 941. "Only if the defendant can establish that she played a relatively minor role in the conduct for which she has already been held accountable – not a minor role in any larger criminal conspiracy – should the district court grant a downward adjustment for minor role in the offense." Id. at 944. Furthermore, "the amount of drugs . . . is a material consideration in assessing a defendant's role in her relevant conduct" and, in some cases, could be dispositive. Id. at 943.

The district court may also evaluate a defendant's role by comparing it to that of other participants in her relevant conduct. Id. at 940. When measuring a defendant's conduct against other participants' conduct, a district court may consider only those participants who are identifiable by the evidence and who were involved in the relevant conduct for which the defendant was convicted. Id. at 944. "The fact that a defendant's role may be less than that of other participants engaged

14

in the relevant conduct may not be dispositive of her role in the offense, since it is possible that none are minor or minimal participants." Id. "[T]he district court must determine that the defendant was less culpable than most other participants in her relevant conduct." Id. (emphasis in original); see also U.S.S.G. § 3B1.2, comment. (n. 3(A)).

Finally, this court has held that a defendant sentenced as a career offender is ineligible for a mitigating role adjustment. United States v. Jeter, 329 F.3d 1229, 1230 (11th Cir. 2003). Ellwood was sentenced as a career offender. Because of Ellwood's career offender status, she was not eligible for a mitigating role adjustment and the district court did not clearly err in denying her such an adjustment. See Jeter, 329 F.3d at 1230.

Even had Ellwood been eligible for the adjustment, the district court did not clearly err in refusing to grant it. Here, where Ellwood's relevant conduct was conspiring to possess with intent to distribute 245 grams of crack, she must establish that she was a minor participant with respect to that relevant conduct, and cannot point to, as she does, a broader criminal conspiracy. See De Varon, 175 F.3d at 944. Also, since Ellwood is held accountable only for the drugs she obtained from Arline, not for drugs that other co-conspirators obtained, the district court was allowed to conclude that she played an important or essential role in the

15

conspiracy to possess those drugs. See id. at 942-43.

The second prong of the De Varon analysis further precludes a mitigating role adjustment. Though the district court noted that others in the conspiracy may have been more culpable than Ellwood, this does not automatically entitle her to a mitigating role adjustment since it is possible that none of the participants are minor or minimal. See id. at 944. Indeed, the district court found that her role in the larger conspiracy as a long term, steady buyer fit the role of other members in the conspiracy. The PSI indicated, and Ellwood did not object, that she bought crack from Arline on a daily basis for a five-week period. Thus, she has not shown that she is substantially less culpable than most other participants in the relevant conduct, and the district court's characterization of her as a long term, steady buyer was not clearly erroneous.

Ellwood was not entitled to a mitigating role adjustment because she was a career offender. Nevertheless, the district court considered the mitigating role adjustment and adequately articulated an acceptable reason for not granting the adjustment. As such, we affirm the district court's ruling on this issue.

**(d) Reasonableness**

Ellwood maintains that her 360-month sentence is unreasonable, especially when many of her codefendants received 10 years or less. After the district court

16

has accurately calculated the guidelines range, it "may impose a more severe or more lenient sentence" that we review for reasonableness. United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005). Such review is deferential, requiring us to "evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Moreover, the reasonableness standard is applied to the ultimate sentence, not each individual decision made during the sentencing process. United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005).

In reviewing a sentence for reasonableness, we are guided by the factors in 18 U.S.C. § 3553(a). Winingear, 422 F.3d at 1246. Relevant factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from other crimes by the defendant, and the need to provide defendant with needed medical care; (3) the available sentences; and (4) the guidelines range. 18 U.S.C. § 3553(a)(1)-(4). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in § 3553(a)." Talley, 431 F.3d at 788.

17

District courts do not need to establish the reasonableness of the sentences they impose by explicitly considering every factor from § 3553(a) on the record; some indication in the record that the court adequately and properly considered appropriate factors in conjunction with the sentence will be sufficient. United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005) (sentence imposed at low end of guidelines range).

In sentencing Ellwood, the district court considered the appropriate § 3553(a) factors and the sentence imposed achieved the purposes of sentencing. Notably, the district court spoke at length about Ellwood's criminal history and career offender status, finding that she had made herself vulnerable to a harsh sentence. In addition to considering Ellwood's history, the district court found that the sentence imposed reflected the seriousness of the offense and provided just punishment. See 18 U.S.C. § 3553(a)(2)(A). The record supports the district court's findings because Ellwood had an extensive criminal history, including many prior drug, forgery and theft convictions, that accrued to 44 criminal history points. The district court also clearly recognized and considered the sentencing disparity when it imposed sentence, but thought the disparity issue was outweighed by Ellwood's criminal history. Furthermore, disparity between sentences imposed on codefendants is generally not an appropriate basis for relief on appeal. See

18

United States v. Regueiro, 240 F.3d 1321, 1325-26 (11th Cir. 2001) (dealing with § 5K2.7 departure).

The district court also sentenced Ellwood at the low end of the guidelines when it could have imposed a life sentence on her. See Winingear, 422 F.3d at 1246 (comparing, as one indication of reasonableness, the actual prison term imposed against the statutory maximum). Since the district court sentenced Ellwood at the low end of the applicable advisory guidelines range and considered appropriate sentencing factors in imposing sentence, and no other circumstances compel a contrary result, her sentence is reasonable.

**(e) Obstruction of justice enhancement**

Defendant Herold argues that he should not have been assessed the enhancement for obstruction of justice because the district court's findings were not adequate for purposes of appellate review because it did not make findings of how the false statements made at the hearing on his motion for a new trial were material or how they significantly obstructed justice. Whether or not the district court properly applied the obstruction of justice enhancement is a mixed question of law and fact. We review the district court's factual findings for clear error and its application of the Sentencing Guidelines to those factual findings de novo. United States v. Arguedas, 86 F.3d 1054, 1059 (11th Cir. 1996).

19

To allow for meaningful appellate review, a district court applying an obstruction of justice enhancement must specifically state what the defendant did, why that action merited the enhancement, and how that action actually impeded the administration of justice of the offense. United States v. Taylor, 88 F.3d 938, 944 (11th Cir. 1996). We need not order a remand where the district court fails to make individualized findings regarding the obstruction of justice enhancement if the record clearly reflects and supports the basis for the enhancement. Id.

A district court may grant a two-level enhancement for obstruction of justice if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense of conviction," and the "obstructive conduct related to the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. Obstructive conduct can vary widely in nature and is not precisely defined. § 3C1.1 cmt. n.3. The obstruction enhancement is warranted where a defendant: (1) attempts to unlawfully influence a codefendant or witness; (2) commits, suborns or attempts to suborn perjury; and (3) provides materially false information to a judge or magistrate. § 3C1.1 cmt. n. 4(a), (b), (f). A material statement is defined as one "that, if believed, would tend to influence or affect the issue under determination." Id. at n.6.

Here, the district court made adequate findings. It identified Herold's knowingly false testimony at the hearing on the motion for a new trial and the false circumstances he attributed to his conversations with Arline as the basis for its obstruction enhancement. The district court further found that Herold's actions fell within § 3C1.1 and noted that the provision included false statements made to judicial and law enforcement officers. The district court also stated that if it had believed Herold's witnesses' testimony "his verdict should rightly have been affected." This fits § 3C1.1's definition of materiality as it would tend to influence the issue under determination. U.S.S.G. § 3C1.1 cmt. n. 6). The district court may not have stated with specificity how the action actually impeded the administration of justice, but remand is not required because the record clearly reflects and supports the basis for the enhancement. See Taylor, 88 F.3d at 944.

From the testimony at the hearing on the motion for a new trial, it is clear that Herold was trying to reduce the drug quantity that he was held accountable for. He procured the testimony of his fellow inmates to say that Arline had exaggerated the amount he had testified to at trial. Testimony by government witnesses revealed that Herold tried to get Arline to change his trial testimony and approached others in an effort to obtain their statements to this effect. This, as the district court characterized, falls within § 3C1.1. Herold's actions attempted to

21

influence a witness, attempted to suborn perjury, and involved false statements to a judicial officer. Though Herold focuses his arguments on appeal about the materiality of the false statements, it is clear from the record that the enhancement applies for more reasons than just this. Furthermore, the testimony, if believed, would have impacted his guidelines range. See U.S.S.G. § 2D1.1(c)(4), (5) (distinguishing between offense levels for between 3.5 and 5 kilograms of cocaine and between 5 and 15 kilograms of cocaine). Herold maintained that he was responsible for less than 5 kilograms; thus, he would have been at a lower base offense level. So, even if the only basis for the enhancement was the false statements he made to the district court, the record demonstrates materiality.

Because the record reflects that Herold attempted to influence witnesses, procured false statements at a hearing on his motion for a new trial, and made false statements to a judicial officer that could have affected his guidelines calculation, the district court did not err in assessing the obstruction enhancement.

**(f) Attribution of crack in addition to cocaine**

Herold also argues on appeal that the district court violated Booker when it determined that Herold was responsible for conspiring to deal crack because the jury did not return a drug quantity finding with respect to crack, only cocaine.

Herold's argument is wholly without merit because nothing in the record

22

indicates that the district court held Herold responsible for 50 grams or more of crack. This amount was not used by the probation officer in calculating Herold's base offense level, but rather the 5 kilograms or more of powder cocaine contained in the jury verdict was used. The district court adopted the findings of the PSI. The district court also made no mention of crack in sentencing Herold or discussing the § 3553(a) factors. Furthermore, his Booker argument is without merit because, as noted above, the district court was permitted to make extra-verdict enhancements under advisory guidelines.

Because Ellwood and Herold cannot establish any error with respect to their convictions or sentences, we affirm.

**AFFIRMED.**[1]

---

[1] Ellwood's request for oral argument is denied.