United States Court of Appeals,

Eleventh Circuit.

No. 94-8543.

UNITED STATES of America, Plaintiff-Appellee,

v.

Larry Armstead DIXON, Defendant-Appellant.

Dec. 27, 1995.

Appeal from the United States District Court for the Middle District of Georgia. (No. 5:93-00077-CR-MAC(WDO), Wilbur D. Owens, Jr., District Judge.

Before KRAVITCH and COX, Circuit Judges, and CLARK, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This case presents the issue of the procedure sentencing courts must follow when imposing an upward criminal history departure above category VI, pursuant to U.S.S.G. § 4A1.3. We hold that sentencing courts need not make step-by-step findings en route to the ultimate sentencing range; rather, criminal history departures above category VI will be reviewed for reasonableness, based on findings as to why an upward departure is warranted and why the particular sentencing range chosen is appropriate.

I.

Larry Armstead Dixon pled guilty to possession of a stolen firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Included in the plea agreement was Dixon's stipulation to six prior armed robbery and burglary offenses, qualifying him for an enhanced sentence as an "armed career criminal" under 18 U.S.C. § 924(e) (carrying a mandatory minimum sentence of fifteen years).

Dixon has a prolific criminal history, including convictions for numerous violent felonies and drug offenses. The presentence investigation report ("PSI") calculated that Dixon had accumulated 28 criminal history points, placing him in category VI (the highest category, for those with thirteen or more points), and that his total offense level was 30. At sentencing,[1] the district court found, pursuant to U.S.S.G. § 4A1.3, p.s., that category VI did not adequately reflect the seriousness of Dixon's past criminal conduct or the likelihood of recidivism and decided to depart upward.[2] The court then determined Dixon's sentence, as follows:

> [W]hat the Court's going to do, pursuant to 4A1.3, is structure a departure by moving incrementally down the sentencing table to find a guideline range which is appropriate in your case. In doing that, the Court determines that a three-level increase is warranted and that will create an offense level of 33 and a criminal history category of VI which will give you a sentencing range of 235 to 293 months.

R2-9. The court proceeded to impose a 250 month sentence.

## II.

Dixon contends that the district court erred in upwardly departing to a sentencing range three offense levels higher than Dixon's without first explicitly considering whether the ranges corresponding to offense levels one and two higher than Dixon's would have been appropriate. Dixon does not challenge the reasonableness of the district court's decision to depart upward pursuant to § 4A1.3 in a situation such as this, where the number of criminal history points far exceeds the category VI range, nor

---

[1]Sentencing took place on April 26, 1994.

[2]The court noted that Dixon's 28 criminal history points would, extrapolating beyond category VI, place him in a hypothetical category XI.

does he dispute his extensive criminal history as described in the PSI. Rather, Dixon argues that the district court's procedure for determining the extent of the departure was flawed because it did not include step-by-step findings for each rejected sentencing range.

Section 4A1.3 of the Guidelines was amended in 1992 to include a procedure for upwardly departing beyond criminal history category VI:

> Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

U.S.S.G. § 4A1.3, p.s. Prior to the addition of this language, courts in this circuit had reviewed departures above category VI only for reasonableness, not requiring the sentencing court to provide explicit justification for rejecting intervening sentencing ranges before settling on an appropriate range within which to sentence. *See United States v. Brown,* 9 F.3d 907 (11th Cir.1993), *cert. denied,* --- U.S. ----, 115 S.Ct. 152, 130 L.Ed.2d 91 (1994);[3] *United States v. Simmons,* 924 F.2d 187 (11th Cir.1991). This is in contrast to the established procedure for upwardly departing from a criminal history category below IV, which requires the sentencing court to discuss each category it passes over en route to the

_____

[3]Although *Brown* at one point quotes the amended version of § 4A1.3, 9 F.3d at 909 n. 2, the opinion does not provide the date on which sentencing occurred, nor does it specify which version of § 4A1.3 is being applied. Because the opinion does not mention the 1992 amendment to § 4A1.3, we assume that the criminal history departure above category VI in *Brown* was imposed pursuant to the pre-amendment guideline.

category that adequately reflects the defendant's past criminal conduct. *See United States v. Williams,* 989 F.2d 1137, 1142 (11th Cir.1993); *United States v. Johnson,* 934 F.2d 1237, 1239-40 (11th Cir.1991).

This case presents an issue of first impression in this circuit: whether the 1992 amendment to § 4A1.3 should require sentencing courts to follow a procedure analogous to the one mandated by *Johnson* and *Williams* when imposing criminal history departures above category VI.[4] Such a procedure would necessitate findings by the sentencing court as to the appropriateness of the sentencing range corresponding to each incremental offense level considered in moving vertically down category VI of the sentencing table, as described in the amended § 4A1.3.

Other circuits to have considered the issue of departures above category VI in light of the 1992 amendment have declined to require step-by-step findings. *See United States v. Daughenbaugh,* 49 F.3d 171, 174-75 (5th Cir.) (requiring "only that the district court consider each intermediate adjustment and state that it has done so, and explain why the guideline category is inappropriate and why the category chosen is appropriate; stating that such an explanation will ordinarily make sufficiently clear why the intermediate adjustments are inadequate"), *cert. denied,* --- U.S. ----, 116 S.Ct. 258, --- L.Ed.2d ---- (1995); *United States v. Thomas,* 24 F.3d 829, 834-36 (6th Cir.) (rejecting the requirement that a district court "provide a mechanistic recitation of its

---

[4]This issue recently was noted, but not decided, in *United States v. Maurice,* 69 F.3d 1553, 1558-59 (11th Cir.1995).

rejection of the intervening, lower guideline ranges"), *cert. denied,* --- U.S. ----, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994); *United States v. Harris,* 13 F.3d 555, 558-59 (2d Cir.1994) (reading the amended § 4A1.3 "as merely suggesting an approach, rather than mandating a step-by-step analysis").

As these other circuits have recognized, there is an important distinction between upwardly departing from criminal history categories below VI and above VI. When departing from a category below VI, courts can juxtapose the defendant's past conduct with the guideline criteria for each criminal history category; this allows for incremental findings based on the objective criminal history criteria explicated in the guidelines, and thereby for meaningful appellate review. On the other hand, a court following the amended § 4A1.3 procedures for departing above category VI increases the defendant's offense level only as a proxy for increasing the effect of the defendant's criminal history on his or her ultimate sentence. The guidelines provide no objective criteria for determining how far down the offense level axis the sentencing court need travel in order to reflect accurately the defendant's criminal history. Instead, the sentencing court must use its discretion in determining which offense level corresponds to the appropriate sentencing range for a given defendant.

This does not mean that the sentencing court is free to ignore the procedure described in amended § 4A1.3. The 1992 amendment was designed to clarify the proper approach to criminal history departures above category VI and to disapprove alternative approaches courts had taken, for instance moving horizontally on

the criminal history axis of the sentencing table to fictitious categories above VI. *See, e.g., United States v. Cash,* 983 F.2d 558, 561 (4th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2380, 124 L.Ed.2d 284 (1993); *United States v. Streit,* 962 F.2d 894, 905-06 (9th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 431, 121 L.Ed.2d 352 (1992); *United States v. Glas,* 957 F.2d 497 (7th Cir.1992); *United States v. Jackson,* 921 F.2d 985, 993 (10th Cir.1990) (en banc). We hold that district courts, in following the methodology described in amended § 4A1.3 for imposing criminal history departures above category VI, need not explicitly discuss their reasons for bypassing incremental offense level sentencing ranges. Rather, the magnitude of these upward departures will be reviewed for reasonableness, based on findings by the district court as to (1) why the extent and nature of the defendant's criminal history warrants an upward departure from category VI, and (2) why the sentencing range within which the defendant is sentenced is appropriate to the case.

In this case, the district court stated that it had moved incrementally down category VI until it found a guideline range appropriate to Dixon's case. Prior to making this determination, the court referenced the detailed catalogue of Dixon's extensive criminal history contained in the PSI and noted his total of 28 criminal history points. Dixon does not dispute the reasonableness of the departure. On these facts, we conclude that the district court provided adequate findings in support of its decision to depart upward from criminal history category VI to impose a sentence of 250 months.

III.

Dixon also contends that he was not given adequate notice of the possibility of an upward departure. Before imposing an upward departure "on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government," a district court must give "reasonable notice that it is contemplating such a ruling." *Burns v. United States,* 501 U.S. 129, 137-39, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991); *e.g., United States v. Valentine,* 21 F.3d 395, 397 (11th Cir.1994). This requirement of reasonable notice follows from the mandate of Fed.R.Crim.P. 32(c)(1) that the parties be given "an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence."

Dixon's PSI included the following language relevant to upward departure:

Part E. FACTORS THAT MAY WARRANT UPWARD DEPARTURE

Pursuant to U.S.S.G. § 4A1.3, adequacy of criminal history category, states that if reliable information indicates the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct, or the likelihood that the defendant would commit future crimes, the Court may consider imposing a sentence departing from the otherwise applicable guideline range. In this case, the defendant has 28 criminal history points, making him a criminal history category of VI. Defendant's extensive history of crime involves mostly burglaries, armed robberies and firearm charges. The seriousness of his criminal actions is reflected in the large number of criminal history points that he has acquired.

Dixon argues that although this language may have given notice that his criminal history could warrant a sentencing departure, it failed to inform him that this departure might be *upward.* We find

it impossible to believe that the probation officer's focus on Dixon's 28 criminal history points, his "extensive history of crime," and the "seriousness of his criminal actions" could have been interpreted as harbingers of a *downward* departure, however. Indeed, Dixon objected to Part E of the PSI in his Objections to the Pre-Sentencing Investigation Report, specifically arguing against an upward departure. And he again raised the possibility of, and argued against, upward departure at the sentencing hearing. We thus conclude that the PSI gave Dixon reasonable notice that his criminal history might serve as a ground for upward departure.

We AFFIRM Dixon's sentence.