[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10006
Non-Argument Calendar

_____

D.C. Docket Nos. 3:18-cr-00011-HES-PDB-1,
3:12-cr-00179-TJC-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN ERIC WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 20, 2019)

Before MARTIN, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

John Eric Williams appeals his 40-month imprisonment sentence for

escaping an institutional facility, in violation of 18 U.S.C. §§ 751 and 4082. On

appeal, Williams argues that his sentence is procedurally unreasonable because the district court (1) failed to notify him that it was contemplating an upward departure from his federal sentencing guidelines range of 27 to 33 months' imprisonment, (2) failed to explain adequately the upward departure, and (3) imposed the upward departure solely because his criminal history category inadequately accounted for his criminal record.  Williams also argues that his sentence is substantively unreasonable.  After review, we affirm Williams's 40-month sentence.

This appeal involves Williams's escape from a halfway house where he was serving his sentence on two firearm convictions.

## I.  BACKGROUND

### A.    Underlying Convictions and Escape

As background, in October 2013, Williams pled guilty to stealing or unlawfully taking or carrying away a firearm from a licensed firearms dealer, in violation of 18 U.S.C. § 922(u) and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Williams's convictions were based on an incident in which he entered a gun shop in Jacksonville, Florida and took a firearm packaged for delivery to an online customer.  The district court sentenced Williams to 70 months' imprisonment.

In May 2017, the Bureau of Prisons transferred Williams to a halfway house in Jacksonville to complete his imprisonment sentence. At that time, Williams's anticipated release date was February 2, 2018.

On July 14, 2017, Williams left the halfway house to work a shift at a construction company. After work, Williams contacted the halfway house and notified them that he was on his way back. On the way back to the halfway house, Williams stopped at a female friend's house and ended up falling asleep. When Williams woke up the next morning, he panicked, realizing that he had missed curfew. Williams never returned to the halfway house, and he was listed as an escapee. Williams acknowledged that, after he did not return to the halfway house, he fell back into his old habits of dealing with stress by using drugs and selling drugs to support his drug habit.

On August 10, 2017, state law enforcement officers arrested Williams for selling $20 worth of cocaine base to an undercover officer in Duval County, Florida. A search incident to the arrest revealed additional cocaine in Williams's pocket. Williams was charged in state court with the sale or delivery of cocaine and possession of cocaine.

On September 27, 2017, Williams was convicted of both charges and sentenced to 13 months' imprisonment. After Williams served his state sentence,

3

federal authorities took him into custody, on July 11, 2018, for having escaped from the halfway house.

A federal indictment charged Williams with one count of escaping an institutional facility in which he was lawfully confined, in violation of 18 U.S.C. §§ 751 and 4082. In August 2018, Williams pled guilty, without a plea agreement, before a magistrate judge at a change of plea hearing. The district court accepted Williams's guilty plea.

## B.    Presentence Investigation Report re: Escape Conviction

The presentence investigation report ("PSI") assigned Williams a base offense level of 13, pursuant to U.S.S.G. § 2P1.1(a)(1). After a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), Williams's total offense level was 11.

Williams's criminal history category was VI based on his criminal history score of 25 points. Prior to his escape conviction, Williams had 60 criminal convictions. His scored convictions included (1) burglary of a structure or conveyance, (2) attempted burglary of a structure, (3) attempted robbery, (4) stealing or unlawfully taking or carrying away a firearm from a licensed firearms dealer, (5) possessing a firearm as a convicted felon, (6) sale or delivery of cocaine, (7) possession of cocaine, (8) using or possessing with intent to use drug paraphernalia (twice), (9) tampering with evidence, (10) uttering a forged bill,

4

(11) theft, (12) petit theft (five times), (13) shoplifting, and (14) resisting or opposing a retail merchant. His unscored convictions included several additional drug and theft offenses, among others.

With a total offense level of 11 and a criminal history category of VI, Williams's advisory guidelines range was 27 to 33 months' imprisonment. Williams's escape conviction was subject to a statutory maximum term of five years' imprisonment. The PSI advised that any term of imprisonment for the escape conviction would be consecutive to the undischarged term of imprisonment Williams was serving for his underlying 2013 firearm convictions at the time of his escape.

The PSI also identified "USSG §4A1.3—Criminal History Adequacy" as a potential ground for departure. Neither Williams nor the government objected to the PSI.

## C.    Sentencing Memorandum

Before his sentencing hearing, Williams's counsel filed a sentencing memorandum, which detailed Williams's life history. Williams's stepfather physically and verbally abused him while growing up. Because of that abuse, he dropped out of high school, turned to drugs at a young age, and became addicted to cocaine, marijuana, and alcohol. He also noted that much of his criminal history derived from living as a homeless man. Williams requested 24 months'

imprisonment, to be served consecutively to the undischarged term of imprisonment he was serving at the time of his escape. He also requested drug and mental health counseling.

## D.    Sentencing Hearing

In December 2018, the district court held Williams's sentencing hearing. After confirming there were no objections, the district court adopted the factual findings and guidelines calculations in the PSI. The district court stated that it had read the PSI and Williams's sentencing memorandum and then proceeded to hear the parties' arguments about sentencing.

The government reviewed the factual details of the escape conviction and noted Williams's worsening criminal history, specifically the attempted robbery at age 34, motor vehicle theft at age 37, burglary of a structure at age 41, and stealing or unlawfully taking away a firearm from a licensed firearms dealer and possession of a firearm by a convicted felon at age 43. The government detailed Williams's history of drug abuse and asked for a guidelines range sentence, which was 27 to 33 months. The government recommended a guidelines range sentence because Williams had not taken opportunities to better himself, had endangered others through his criminal conduct, and would continue endangering himself and the community so long as he consumed drugs.

Williams then presented his sentencing arguments.  He reviewed the facts, contained in his sentencing memorandum, relating to his abusive stepfather, lifelong drug use, and criminal history.  Williams described how he never moved past what had happened to him as a child and how he spent the rest of his life self-medicating with drugs.  He detailed his recovery at the halfway house, the circumstances leading to his escape, his breakdown, and his return to drug use.  He explained that his escape was a minor one, and that he was only away from the halfway house for a few months.  But Williams acknowledged that he had a "horrible, terrible [criminal] record."  He explained the penalties he would face in prison and the sentences he had left to serve.  He concluded by asking the court to consider the totality of his circumstances and requested 24 months' imprisonment, as well as a drug rehabilitation program and mental health counseling.

Williams and his sister personally addressed the district court.  Williams's sister described the abuse they both had suffered as children.  In allocution, Williams accepted responsibility for his actions, described his childhood abuse and the effect it has had on his life, and told the district court that he wanted to improve his mental health and become a better person.

The district court stated that it had listened to both parties' arguments and had read the PSI and the sentencing memorandum.  The district court sentenced Williams to 40 months' imprisonment, consecutive to the term of imprisonment

7

imposed for his underlying 2013 firearm offenses, and three years' supervised release. The court also ordered that Williams participate in substance abuse and mental health programs. The district court stated that it had considered the advisory guidelines range, as well as the 18 U.S.C. § 3553(a) factors, and found the 40-month sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing.

Further, the district court noted that it had departed from the advisory guidelines range under U.S.S.G. § 4A1.3 because Williams's "criminal history [category] of a VI substantially under-represent[ed] the seriousness of [his] criminal history and the likelihood that [he would] commit crimes in the future."

The government did not object to the 40-month sentence. Williams objected to the sentence and the manner in which the sentence was pronounced, stating that it was an upward departure and that he was not given notice that the district court was going to depart upward.

After sentencing Williams, the district court filed a Statement of Reasons that stated that the court had departed from the advisory guidelines range, citing "4A1.3 Criminal History Inadequacy."

## II. PROCEDURAL REASONABLENESS

On appeal, Williams argues that his sentence is procedurally unreasonable because the district court (1) failed to notify him that it was contemplating an

upward departure, (2) failed to explain adequately the upward departure, and (3) imposed the upward departure solely because his criminal history category inadequately accounted for his criminal record.

## A.    Notice of Upward Departure

As to notice, Williams argues that the district court violated Federal Rule of Criminal Procedure 32(h) by departing upward on a ground—the inadequacy of his criminal history category—that was not identified in the PSI or in a party's presentencing submission and without giving him reasonable notice that it was considering such a departure.

We review de novo legal questions concerning the Federal Rules of Criminal Procedure.  United States v. Spears, 443 F.3d 1358, 1361 (11th Cir. 2006).  Rule 32(h) provides that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the [PSI] or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure."  Fed. R. Crim. P. 32(h).  "The notice must specify any ground on which the court is contemplating a departure."  Id.

Williams's argument is belied by the record.  Here, the PSI provided Williams with notice that the district court might depart upward citing specifically to U.S.S.G. § 4A1.3.  The PSI stated, "The probation officer has identified the following as potential grounds for departure: USSG §4A1.3—Criminal History

Adequacy." That statement in Williams's PSI informed him that § 4A1.3, which authorizes both upward and downward criminal history departures, would potentially be at issue at his sentencing hearing.

The reference to § 4A1.3 in Williams's PSI did not explicitly mention the possibility of either an upward or downward departure. However, given Williams's lengthy and serious criminal history, any reasonable defendant would have understood that the references to § 4A1.3 and criminal history adequacy meant that an upward criminal history departure, rather than only a downward departure, might be imposed at sentencing. See United States v. Dixon, 71 F.3d 380, 384 (11th Cir. 1995) ("We find it impossible to believe that the probation officer's focus on [the defendant's] 28 criminal history points, his extensive history of crime, and the seriousness of his criminal actions could have been interpreted as harbingers of a downward departure." (quotation marks and emphasis omitted)).

Indeed, prior to his escape conviction, Williams had 60 other criminal convictions. His scored convictions involved serious offenses, including burglary, robbery, theft, forgery, drug, and firearm offenses, resulting in 25 criminal history points. His numerous unscored convictions included several additional drug and theft offenses. At sentencing, Williams even acknowledged that he has a "horrible, terrible [criminal] record." Thus, Williams's argument that the PSI failed to adequately notify him of a potential upward departure is meritless.

**B.    Explanation of Upward Departure**

Williams next argues that the district court failed to explain adequately its decision to depart upward based on the inadequacy of his criminal history category.

We review de novo the adequacy of the district court's explanation for a sentence. United States v. Ghertler, 605 F.3d 1256, 1262 (11th Cir. 2010). Under 18 U.S.C. § 3553(c), a district court is required to state in open court the specific reasons for imposing a particular sentence, including a sentence outside the advisory guidelines range. 18 U.S.C. § 3553(c)(2).

The length and amount of detail describing the district court's reasoning depends on the circumstances. Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). It is sufficient for the district judge to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Id. The adequacy of the explanation should be analyzed in light of the context and the record. See id. at 359, 127 S. Ct. at 2469. If the case is "conceptually simple . . . and the record makes clear that the sentencing judge considered the evidence and arguments," the judge need not make extensive comments. Id.

Here, the record demonstrates that the district court's explanation for the upward departure was sufficient. The district court stated that an upward departure

11

under § 4A1.3 was warranted because Williams's criminal history category of a VI substantially under-represented the seriousness of his criminal history and the likelihood that he would commit future crimes. The PSI summarized Williams's criminal record. At sentencing, the government emphasized how Williams had committed more serious crimes as he had gotten older, including attempted robbery at age 34, motor vehicle theft at age 37, burglary of a structure at age 41, and stealing or unlawfully taking away a firearm from a licensed firearms dealer and possession of a firearm by a convicted felon at age 43. Williams acknowledged his "horrible, terrible [criminal] record," but stressed that his criminal history stemmed from his childhood abuse and asked the district court to consider the totality of his circumstances. The district court stated that it had listened to both parties' arguments and had read the PSI and Williams's sentencing memorandum. The district court also explained that it had considered the advisory guidelines range and the 18 U.S.C. § 3553(a) factors, and found a 40-month sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. In light of the context and record in Williams's case, no further explanation was necessary. See id. at 358-59, 127 S. Ct. at 2469 (explaining that an extensive explanation of a sentence was not required where the context and record made clear that sentencing court considered evidence and arguments and found circumstances insufficient to warrant lower sentence).

## C.    Basis for Upward Departure

Williams also argues that the district court's reasons for imposing an upward criminal history departure were not compelling because Williams's criminal history category already accounted for his criminal record.

We review a decision to depart upward for an abuse of discretion.  United States v. Magluta, 418 F.3d 1166, 1184 (11th Cir. 2004).  The Sentencing Guidelines provide that a district court may impose an upward departure based on the inadequacy of a defendant's criminal history category "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."  U.S.S.G. § 4A1.3(a)(1). A sentencing court may base an upward criminal history departure on, among other things, prior sentences not used in computing the criminal history category and prior sentences of substantially more than one year imposed as a result of independent crimes committed on different occasions.  Id. § 4A1.3(a)(2)(A) & (B). The magnitude of "upward departures will be reviewed for reasonableness, based on findings by the district court as to (1) why the extent and nature of the defendant's criminal history warrants an upward departure from category VI, and (2) why the sentencing range within which the defendant is sentenced is appropriate to the case."  Dixon, 71 F.3d at 383.

13

As an initial point, to the extent that Williams argues that the district court abused its discretion by even considering his criminal record for its upward departure because it was already accounted for in his criminal history category, the Sentencing Guidelines explicitly contemplate a departure based on a defendant's criminal history. See U.S.S.G. § 4A1.3(a)(1).

Here, the district court reasonably concluded that an upward departure was warranted because Williams's criminal history category of VI substantially under-represented the seriousness of his criminal history and the likelihood that he will commit other crimes. See id. As explained above, at sentencing, Williams's scored convictions included serious burglary, robbery, theft, forgery, drug, and firearm offenses, resulting in 25 criminal history points. See id. § 4A1.3, comment. n.2(B). And Williams had committed those more serious crimes as he had gotten older. See id. Several of those convictions involved sentences of substantially more than one year. See id. § 4A1.3(a)(2)(B). Williams also had numerous unscored convictions, including several more drug and theft offenses. See id. § 4A1.3(a)(2)(A). Indeed, after Williams escaped from the halfway house, he returned to committing crimes by using drugs and selling drugs to support his drug habit. See id. § 4A1.3(a)(1).

Considering the entirety of the record, the district court did not abuse its discretion in determining that Williams's criminal history category of VI

14

substantially under-represented the seriousness of his criminal history and the likelihood that he will commit other crimes. The district court's upward departure to 40 months' imprisonment was only 7 months above the top of Williams's advisory guidelines range of 27 to 33 months and was clearly within the district court's discretionary authority.

## III.  SUBSTANTIVE REASONABLENESS

Finally, Williams argues that his sentence is substantively unreasonable because the district court did not significantly consider the § 3553(a) factors.

We review the reasonableness of a sentence using a "deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). A party challenging substantive reasonableness has the burden of showing that the sentence is unreasonable in light of the record and the § 3553(a) factors.[1] United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

Although, in choosing a sentence, the district court must consider the § 3553(a) factors, the district court is not required to address each factor separately or to state that a particular factor is not applicable. United States v. Bonilla, 463

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public from the defendant's further crimes; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

F.3d 1176, 1182 (11th Cir. 2006).  Rather, an acknowledgement that the district court has considered the defendant's arguments and the § 3553(a) factors generally will suffice.  See United States v. Docampo, 573 F.3d 1091, 1100 (11th Cir. 2009).  The weight given to any § 3553(a) factor is a matter committed to the sound discretion of the district court.  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).  We will vacate a sentence "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

Williams has not shown that his 40-month sentence is substantively unreasonable.  The district court explicitly stated on the record that it considered Williams's sentencing memorandum, the parties' arguments, the advisory guidelines range, and the § 3553(a) factors and ultimately concluded that Williams's criminal history category under-represented the seriousness of his criminal history and the likelihood he would commit additional crimes.  The district court's statements at sentencing were more than sufficient to show it considered the § 3553(a) factors, in particular Williams's personal history and characteristics and the need to protect the public from his future crimes.  See Docampo, 573 F.3d at 1100; 18 U.S.C. § 3553(a)(1) & (2)(C).

16

Indeed, when Williams escaped from the halfway house, he was serving a 70-month sentence for two firearms convictions. And his criminal record included 60 prior convictions, some of which were serious offenses. All of Williams's prior terms of imprisonment and convictions had not deterred him from escaping and continuing to commit crimes.

In light of these circumstances, the district court reasonably determined that a modest, 7-month upward departure to a 40-month sentence was warranted. Moreover, Williams's 40-month sentence is 20 months below the 5-year statutory maximum term of imprisonment, which is an indication that the sentence is reasonable. See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (comparing, as one indication of reasonableness, the sentence imposed against the statutory-maximum penalty).

## IV. CONCLUSION

On this record, Williams has not shown that his 40-month sentence was procedurally or substantively unreasonable. Accordingly, we affirm Williams's sentence.

**AFFIRMED.**