[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13180
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cr-00004-TWT-RGV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK ANTONIO SANDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 17, 2020)

Before MARTIN, ROSENBAUM and ED CARNES, Circuit Judges.

PER CURIAM:

Mark Antonio Sanders appeals his 84-month prison sentence for possessing a firearm as a convicted felon and possessing a firearm with an obliterated serial number.

## I.

Sanders has a long history of convictions for violent crimes, many of them involving guns. In 1990, when he was 21 years old, he used a gun to hit a woman he was living with. One year later he shot a man in the testicles. At age 25 he committed an armed carjacking and robbery. Four years after that, he was charged for another domestic violence incident involving the same woman as the 1990 incident. Two years later he hit the same woman again, this time with a glass tabletop in front of their children.

In 2004 Sanders and an accomplice were caught in the act of robbing a man they had shot. As a result of that crime he was convicted of a federal firearms possession charge and sentenced to 10 years in prison.[1] When his prison term ended in 2012, Sanders was placed on supervised release. Less than a year later, his supervised release was revoked because he committed another battery. He was ordered to serve 12 months in prison followed by another 12 months of supervised

---

[1] At first Sanders was sentenced to 327 months (27 years) in prison as an armed career criminal. After he successfully moved to set aside his sentence under 28 U.S.C. § 2255, see Order, United States v. Sanders, No. 1:04-cr-193 (N.D. Ga. Nov. 18, 2009), he was resentenced to 10 years, which was the statutory maximum.

release.  He served the prescribed time in prison but didn't make it through 12 months of supervised release.  He was sent back to prison after testing positive for cocaine twice, repeatedly failing to show up for drug screenings, skipping a substance abuse treatment class, and failing to report to his probation officer.  After serving the remainder of his prison term, Sanders was released.

That brings us to the conduct underlying this case.  In May 2017, Sanders walked up to Dwayne Weems while he was sitting on a porch, hit him in the face with a pistol, and shot him in the foot.  After the police arrested Sanders for that crime, they recovered the pistol he had been carrying.  It was a semiautomatic with the serial number removed.

## B.

For carrying that pistol, a federal grand jury indicted Sanders on two counts. Count 1 charged him with possessing a firearm while a convicted felon, in violation of 18 U.S.C. § 922(g).  Count 2 charged him with possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k).  He pleaded guilty to both counts without a plea agreement.

Despite Sanders' long history of armed robbery and other violent crimes, the Presentence Investigation Report (PSR) gave him a criminal history score of only four, which put him in criminal history category III.  Because he had been in prison from 2004 until 2012, most of his past convictions were too old to be counted

under the guidelines.  See U.S.S.G. § 4A1.2(e) (discussing the applicable time limits for past convictions).  With a total offense level of 15, his advisory guidelines range was only 24 to 30 months in prison.  The PSR noted that an upward departure under U.S.S.G. § 4A1.3 might be appropriate if the district court found (as it reasonably could) that Sanders' criminal history score underrepresented the seriousness of his past criminal conduct.

The government filed a sentencing memorandum asking the district court to either depart upward under § 4A1.3 or impose an upward variance.  In the departure section of its memorandum, the government discussed the two ways a court could depart upward under § 4A1.3 — the "step-by-step" approach and the "recalculation" approach.  Under either departure approach, the government argued, Sanders should be sentenced as if he were in criminal history category VI with an offense level of 24.  In that event, the government said, Sanders' advisory guidelines range would be 100 to 120 months in prison.  In the variance section of its memorandum, the government argued that Sanders' past convictions and his violent assault of Weems merited an upward variance to a sentence of 120 months in prison under the 18 U.S.C. § 3553(a) factors.

At the sentence hearing, neither the government nor Sanders objected to the guidelines calculation in the PSR and the district court followed it, calculating the range as 24 to 30 months.  The court asked the government whether it was seeking

a "non-guideline sentence." The government said it was, directed the court's attention to the sentencing memorandum it had filed requesting either an upward departure or a variance, and stated that it wanted to present argument and testimony in support of that request. The testimony the government presented was about Sanders' involvement in Weems' shooting. Sanders did not present any testimony or other evidence.[2]

In its argument, the government "respectfully request[ed] an upward variance to 120 months' imprisonment or ten years, which is the statutory maximum." It summarized Sanders' history of violence in the community, most of which had not been counted in calculating his criminal history score. The government argued that Sanders' shooting of Weems was a continuation of that same pattern of conduct. It suggested that a "guideline[s] range of 24 to 30 months is grossly underrepresenting the danger that Mr. Sanders poses to this community," and that a sentence of 120 months "is, at a minimum, necessary to . . . promote respect for the law, to adequately punish this repeat conduct, [and] to protect the community from future crimes of Mr. Sanders." For those reasons, the

---

[2] He did, however, object to the government's reliance on charges that did not lead to convictions as the basis for an "upward departure." And he argued that there was not enough evidence for the court to base an "upward departure" on his supposed involvement in Weems' shooting. He does not pursue either of those positions in this appeal.

government "respectfully request[ed] that under the 3553(a) factors, this [c]ourt sentence Mr. Sanders to an appropriate term of 120 months in prison."

After hearing argument from the defense, the court stated:

I'm going to grant the Government's motion for an upward departure in this case. I don't believe that a criminal history category III adequately represents Mr. Sanders' 30 years of committing violent crimes and the likelihood that he will recidivate, and therefore I believe that under the facts and circumstances of this case, I believe an upward departure is appropriate.

The court imposed a total sentence of 84 months in prison, consisting of an 84-month sentence on the felon in possession charge and a concurrent, statutory-maximum 60-month sentence on the obliterated serial number charge. In support of that sentence the court listed the convictions that were not accounted for in Sanders' criminal history score but should be considered in sentencing him. It stated that it was not following the government's recommendation of 120 months in prison because "under the facts and circumstances of this case, Mr. Sanders is entitled to some credit for pleading guilty and at least accepting responsibility for possession of the firearm on May 30th of 2017."

The court also credited Weems' identification of Sanders as the man who shot him, and it said that shooting was a factor in its decision to "depart upward."[3] The court explained that an 84-month prison sentence:

---

[3] On appeal Sanders does not challenge the district court's factual finding that he was the person who shot Weems.

6

is a fair and reasonable one, considering the sentencing factors set forth in [18 U.S.C. § 3553(a)], specifically the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public.

After the court pronounced its sentence, Sanders objected "on both substantive and procedural reasonableness [grounds], based on the arguments and objections [he] made during the hearing."

## II.

Sanders makes two contentions on appeal. First, he contends that the district court committed a procedural error because it departed upward under § 4A1.3 without following the correct procedures for doing so. Second, he contends that his sentence is substantively unreasonable. We address his contentions in that order.

## A.

Section 4A1.3(a)(1) of the guidelines provides: "If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." Once a district court decides to depart upward under § 4A1.3, there are two ways it can do so.

The first option is to use a "step-by-step" approach. Under that approach,

[t]he court must look first to the next criminal history category. If that category adequately reflects the defendant's past conduct, then the court must state its findings and sentence the defendant within the range for the new category. If, on the other hand, the court decides that this new category is still inadequate to reflect the defendant's criminal history, the court must look to the next highest category and repeat its inquiry.

United States v. Sammour, 816 F.3d 1328, 1341–42 (11th Cir. 2016) (quotation marks omitted). The court must discuss each category it passes over on its way to the category that actually reflects the defendant's past criminal conduct. United States v. Dixon, 71 F.3d 380, 382 (11th Cir. 1995).

The second departure procedure option is the "recalculation" approach. Under it, the district court "assign[s] criminal history points to the unscored convictions and extrapolate[s] the criminal history category that would have applied" if those convictions had been scored. Sammour, 816 F.3d at 1342.

Under either approach, if the court reaches criminal history category VI and decides that an even higher departure is warranted, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B); see United States v. Smith, 289 F.3d 696, 711 (11th Cir. 2002). In moving down the sentencing table, the court "need not explicitly discuss [its] reasons for bypassing incremental offense level sentencing ranges." Dixon, 71 F.3d at 383.

8

Sanders argues that the district court followed neither the step-by-step approach nor the recalculation approach. Instead, he says, the court announced that it was departing upward to a sentence of 84 months in prison without either recalculating his criminal history score or moving step-by-step through the criminal history categories. According to Sanders, that was reversible error. See United States v. Williams, 989 F.2d 1137, 1142 (11th Cir. 1993) ("The district court in this case failed to follow the step-by-step procedure [for an upward departure under § 4A1.3]. . . . As a result of this procedural fault, the upward departure was in error and requires remand."). Sanders also asserts that the district court should have stated on the record his new guidelines range after departing upward and should have explained what approach it took to reach that guidelines range.

In response, the government argues that the district court did not impose a departure at all, but instead imposed a variance. It points to evidence in the record that supposedly shows the district court intended to impose a variance despite stating three times that it was imposing a departure.

Ordinarily, we would review de novo the district court's application of the sentencing guidelines and would review its factual findings for clear error. United States v. Flanders, 752 F.3d 1317, 1339 (11th Cir. 2014). Sanders did not, however, object in the district court to the court's failure to follow the proper

9

procedures in departing upward under § 4A1.3.  That means we review his contention only for plain error.  See United States v. Zinn, 321 F.3d 1084, 1087 (11th Cir. 2003).[4]  To prevail, Sanders must show that the court made an error that was plain, that affected his substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  See Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904–05 (2018).

Assuming that the district court departed upward instead of varying upward, that it erred by not following the prescribed departure procedure, and that the error was plain under existing law, Sanders has not established that it affected his substantial rights.  To make that showing, he has to demonstrate "a reasonable probability that, but for the error, the outcome of the proceeding would have been

---

[4] Sanders argues that he preserved the asserted error by objecting at the end of the sentence hearing "on both substantive and procedural reasonableness [grounds], based on the arguments and objections [he] made during the hearing."  But at no point did Sanders argue or object that the district court had failed to follow the proper procedures for departing upward.  And his general objection at the end of the sentence hearing was too broad to preserve this specific issue.  See United States v. Carpenter, 803 F.3d 1224, 1238 (11th Cir. 2015) ("A sweeping, general objection is insufficient to preserve specific sentencing issues for review.").

The Supreme Court's recent decision in Holguin-Hernandez v. United States, 140 S. Ct. 762 (2020), does not change our conclusion.  In that case the Court held that by requesting a certain sentence, a defendant generally preserves his argument that a higher sentence is substantively unreasonable.  Id. at 766.  But the Court expressly did not decide "what is sufficient to preserve a claim that a trial court used improper procedures in arriving at its chosen sentence."  Id. at 767.

Nor does the reasoning of Holguin-Hernandez help Sanders.  The crux of its reasoning is that "[b]y informing the court of the action he wishes the court to take, a party ordinarily brings to the court's attention his objection to a contrary decision."  Id. at 766 (cleaned up).  Sanders argued against imposition of any upward departure or variance, so he likely preserved he preserved a challenge to the district court's decision to impose one or the other.  But he did not object to the district court's failure to use a different procedure to depart upward, which is what he is challenging in this appeal.

10

different." Id. (quotation marks omitted). And in this context a "different" outcome means a shorter sentence, not an equal or longer one. See Dell v. United States, 710 F.3d 1267, 1276 (11th Cir. 2013) ("[I]f the chances of a greater and a lesser sentence weigh in equipoise, a defendant cannot establish that an error affected his substantial rights.").

To make his prejudice argument, Sanders relies mainly on Molina-Martinez v. United States, 136 S. Ct. 1338 (2016). According to him, that case held that a defendant shows that an error affected his substantial rights simply by showing that the error resulted in the wrong guidelines range. But that is not what Molina-Martinez held. Instead, it held that "[i]n most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." Id. at 1346 (emphasis added); see Rosales-Mireles, 138 S. Ct. at 1907 (describing the holding of Molina-Martinez as: "[A]n error resulting in a higher range than the Guidelines provide usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than 'necessary' to fulfill the purposes of incarceration") (emphasis added); see also United States v. Depue, 912 F.3d 1227, 1235 (9th Cir. 2019) ("[H]ere, the evidence is insufficient to demonstrate that a different [loss calculation] method would have generated a lower Guidelines range, and so does not show a reasonable probability of a different outcome."); United

11

States v. Mayendia-Blanco, 905 F.3d 26, 37–39 (1st Cir. 2018) (holding that the district court's plain guidelines error did not affect the defendant's substantial rights because the defendant failed to show that the error resulted in <u>a higher guidelines range</u>) (emphasis added).

Molina-Martinez is distinguishable because Sanders does not contend that he was sentenced under a guidelines range that was higher than it should have been. Instead, Sanders' claim is that in departing upward under U.S.S.G. § 4A1.3(a), the district court did not follow the prescribed departure procedures. The Court in Molina-Martinez reasoned that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar," and that "when a Guidelines range moves up or down, offenders' sentences [tend to] move with it." 136 S. Ct. at 1346 (quotation marks omitted) (alteration in original). As a result, when a defendant is sentenced under a guidelines range that is too high, there is usually a reasonable probability that the court would have imposed a lower sentence if the defendant's guidelines range had been lower. See id. at 1346–47. But in this case, there is no indication that the district court's alleged error caused it to apply a guidelines range that was too high; instead, the problem is that the district court did not pick a new guidelines range at all and did not show its work.

Perhaps realizing that Molina-Martinez cannot bear the weight he puts on it, Sanders argues in a footnote that the district court likely would have imposed a

12

lower sentence if it had followed the correct departure procedures. But Sanders

offers nothing at all to support that speculation, and there is nothing to support it.

Given Sanders' extraordinary criminal history, every indication is that the district

court would have reached the same result regardless of the departure procedure it

followed or failed to follow. See U.S.S.G. § 4A1.3(a)(2). To the extent it is

unknown whether the court would have reached the same sentence, Sanders loses

the argument because the burden regarding prejudice is on the appellant who failed

to object. "[W]here the effect of an error on the result in the district court is

uncertain or indeterminate — where we would have to speculate — the appellant

has not met his burden of showing a reasonable probability that the result would

have been different but for the error[.]" United States v. Rodriguez, 398 F.3d

1291, 1301 (11th Cir. 2005) (citing Jones v. United States, 527 U.S. 373, 394–95

(1999)).[5]

B.

Sanders also contends that his sentence is substantively unreasonable.

Regardless of whether the district court imposed a departure or a variance, the

---

[5] Sanders argues that our decision in Rodriguez is no longer good law to the extent it relies on Jones. He points out that Rosales-Mireles narrowed Jones' statement "that discretion under [the plain error rule] should be exercised 'sparingly.'" Rosales-Mireles, 138 S. Ct. at 1909. That may be true, but the Court in Rosales-Mireles was discussing Jones in the context of the fourth prong of plain error review, not the third. See id. It did not abrogate Jones' holding that errors with "an indeterminate effect on the outcome of the proceeding" do not affect substantial rights, Jones, 527 U.S. at 395.

13

sentence it imposed must still be reasonable in light of the § 3553(a) factors.  See

United States v. Martin, 455 F.3d 1227, 1236–37 (11th Cir. 2006).

We review the substantive reasonableness of a sentence for abuse of

discretion.  Gall v. United States, 552 U.S. 38, 46 (2007).  A district court abuses

its discretion and imposes a substantively unreasonable sentence when it "(1) fails

to afford consideration to relevant factors that were due significant weight, (2)

gives significant weight to an improper or irrelevant factor, or (3) commits a clear

error of judgment in considering the proper factors."  United States v. Irey, 612

F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks omitted).  We may

vacate a sentence as substantively unreasonable only if we "are left with the

definite and firm conviction that the district court committed a clear error of

judgment in weighing the § 3553(a) factors by arriving at a sentence that lies

outside the range of reasonable sentences dictated by the facts of the case."  Id. at

1190 (quotation marks omitted).

Sanders argues that the district court failed to give enough consideration to

the guidelines range, which is one of the § 3553(a) factors.  He points out that the

court mentioned the guidelines range only once, several hours before it actually

pronounced its sentence, and never revisited that range.  But generally, "[t]he

weight to be accorded any given § 3553(a) factor is a matter committed to the

sound discretion of the district court."  United States v. Clay, 483 F.3d 739, 743

14

(11th Cir. 2007). We review that part of the district court's reasoning only to see if it committed a "clear error of judgment." Irey, 612 F.3d at 1190. And it did not.

Sanders also argues that the district court did not have a sufficiently compelling justification for imposing an 84-month sentence, which was nearly three times the high end of his initial guidelines range.[6] But the justification was compelling. Sanders has a decades-long history of violence, and particularly armed violence, in his community, leading up to and including this crime. His criminal history was interrupted only when Sanders was given a 10-year federal prison sentence for a firearms possession charge. Even that 10-year sentence did not deter him from further acts of violence; it did not stop him from attacking and shooting Weems not long after Sanders was released from federal custody.

In sum, Sanders violently assaulted a woman in three different incidents, he shot two men in two separate incidents, he committed two different armed robberies, and he violated the terms of his supervised release in several different ways including using cocaine at least twice. Given all of that, the 84-month

---

[6] Ordinarily, when a district court grants a departure under the guidelines, we review the substantive reasonableness of the final sentence using the post-departure guidelines range as our benchmark. See United States v. Hayes, 762 F.3d 1300, 1307 (11th Cir. 2014). Here, however, assuming the district court imposed a departure and not a variance, it never selected a new guidelines range in the process of departing upward. For purposes of this unusual case, we will assess the substantive reasonableness of Sanders' sentence using his initial guidelines range of 24 to 30 months in prison as our benchmark. That is what Sanders asks us to do, and doing so does not affect the outcome of this appeal because his sentence is substantively reasonable even when compared to that low guidelines range.

15

sentence was appropriate and reasonable in light of the nature and seriousness of the offense, Sanders' history and characteristics, the need to protect the public from his future crimes, and the need to deter him from future criminal conduct. 18 U.S.C. § 3553(a), (a)(1), (a)(2)(A)–(C).[7]

**AFFIRMED.**

---

[7] Sanders also argues that his sentence is unreasonable because the district court contradicted itself by saying that a statutory-maximum sentence would be too severe, but then imposing a concurrent statutory-maximum five-year sentence on Count 2, the charge for possessing a gun with an obliterated serial number. But there is no contradiction. What the district court actually said was: "I'm not following the government's recommendation to sentence Mr. Sanders to the maximum term of imprisonment of 120 months[.]" The clear meaning of that statement was that a 120-month prison sentence was longer than the district court was going to impose, not that a statutory-maximum sentence of five years on the Count 2 charge was inappropriate.