[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13851

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHN ASHLEY JONES, JR.,
a.k.a. John Jones,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 2:21-cr-00030-TFM-N-1

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and BRANCH, Circuit Judges.

PER CURIAM:

John Jones, Jr. appeals his sentence of 112 months of imprisonment for possessing a firearm as a felon. 18 U.S.C. § 922(g)(1). Jones argues that his sentence is procedurally unreasonable because the district court failed to sequentially consider whether the next highest criminal history category was appropriate. *See* United States Sentencing Guidelines Manual § 4A1.3(a)(4)(B) (Nov. 2018). Jones also argues that his sentence is substantively unreasonable. We affirm.

Jones pleaded guilty to the firearm charge in exchange for a recommendation from the government for a sentence at the low end of his guideline range. Jones's presentence investigation report described six prior convictions involving firearms. Jones had convictions in 2004 for discharging a firearm into a building or vehicle and for second-degree assault, in 2010 for discharging a firearm into a building or vehicle and for manslaughter, and in 2013 for possessing a controlled substance while in possession of a pistol and possessing a firearm as a felon. Jones had a criminal history score of 15, and two points were added for committing his offense while on supervised release. With a criminal history score of 17 and a criminal history category of VI, Jones faced an advisory guideline range of 51 to 63 months of imprisonment *see* U.S.S.G. ch. 5, pt. A, and a statutory penalty of 10 years of imprisonment, 18 U.S.C.

§ 924(a)(2). The presentence report classified Jones's prior conviction for second-degree assault as a crime of violence. And the report provided that,"[i]f the plea colloquy is obtained for [Jones's] Manslaughter conviction . . ., and it is determined that the conviction was for Voluntary Manslaughter, then [Jones] will have two prior convictions for a crime of violence" and his "base offense level would become 24."

Based on the presentence report, the district court postponed Jones's sentencing hearing pending a submission of "brief[s] on the issue of upward departure" from Jones and the government. Jones argued that his criminal history score accounted for the seriousness of his preceding conduct, which he classified as reckless instead of intentional. He also argued that he had to carry a gun in self-defense in Selma, Alabama. The government responded that Jones's criminal history category failed to adequately represent the seriousness of his criminal history, as evidenced by his admission in pleading guilty to second-degree assault for using a firearm "with intent to cause physical injury" to his victim and the record of his manslaughter crime "support[ing] the conclusion that he was the antagonist in th[e] matter." The government attached to its response records of Jones's prior convictions.

At sentencing, the district court "adopt[ed] the presentence report with the specific factual findings that the total offense level is 17, the criminal history category is VI, [and] the guidelines range is 51 to 63 months . . . ."After repeating the arguments made in his brief, Jones requested a departure downward to a sentence of 40

months of imprisonment or a sentence at the low end of his guideline range. Jones acknowledged that he "made some bad decisions," asked for a "lenient" sentence within his guideline range, and stated he would not return to Selma "and put myself in the situation to be around people with firearms or anything of that nature." The district court expressed concern that Jones kept "going back" to prison, did not "buy [Jones's] argument that . . . Selma's such a bad place that you had to have a gun," and urged Jones to discontinue his criminality when released from prison. The district court stated that Jones's criminal history, starting as "a teenager . . . [of] not only possess[ing] a firearm but . . . us[ing] it," revealed that he was more of "a danger to the community" than other offenders with the "same number of criminal history points" and that nothing had "changed . . . [because he] just got[] caught yet again with a firearm." And Jones's conduct, the district court stated, warranted a "harsher" sentence because he possessed a firearm while "under supervision."

The district court sentenced Jones to 112 months of imprisonment. The district court "f[ound] that the advisory guidelines range [was] not appropriate to the facts and circumstances of the case and would not provide a reasonable sentence" and "opin[ed] [that Jones] [was] a menace to society" by "not just possessi[ng] . . . firearms, but . . . us[ing] [them] in a way that damages society." The district court explained that its sentence "addresse[d] the seriousness of the offense, the sentencing objectives of punishment, deterrence, and incapacitation." *See* 18 U.S.C. § 3553. The district court

also stated that it "t[ook] into account . . . some time [Jones served] on the revocation sentence" and did "not [impose] the 120-month max" because Jones had "pled guilty."

Jones "object[ed] to the . . . upward departure" and the "procedure in which the sentence was reached . . . ." He argued that his "criminal history [was] adequately represented in the sentencing guideline report . . . ." The district court overruled Jones's objection.

We review a departure from the applicable sentencing guideline range for abuse of discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996). Under our two-step test for reviewing a departure, we first "determine whether the sentence was imposed either in violation of law or as a result of an incorrect application of the Guidelines." *United States v. Williams*, 989 F.2d 1137, 1140 (11th Cir. 1993). We next "examine[] whether the extent of the departure from the relevant guidelines range is reasonable." *Id.*

The Sentencing Guidelines allow the district court to depart upward from a defendant's advisory guideline range "[i]f reliable information indicates that [his] criminal history category substantially under-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes . . . ." U.S.S.G. § 4A1.3(a)(1). To determine whether the defendant's criminal history accurately represents his criminal history, the district court may take into account that the defendant has "[p]rior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions." *Id.*

§ 4A1.3(a)(2). The district court also may consider that "the defend-ant has repeatedly committed crimes and violated probation." *United States v. Briggman*, 931 F.2d 705, 710 (11th Cir. 1991).

"[T]here is substantial overlap between" a departure and a variance, the latter of which "is a sentence imposed outside the guidelines range when the court determines that a guidelines sen-tence will not adequately further the purposes reflected in 18 U.S.C. § 3553(a)." *United States v. Hall*, 965 F.3d 1281, 1295, 1297 (11th Cir. 2020). "To determine whether the district court varied or departed," "we look at whether it cited a specific guidelines de-parture provision in setting the defendant's sentence, or whether its rationale was based on the § 3553(a) factors and a determination that the guidelines range was inadequate." *Id.* at 1296. "When there is an ambiguity in the oral sentencing, as opposed to a conflict be-tween the oral pronouncement and the written judgment, it is proper to look to the written judgment to ascertain the [district court's intention." *United States v. Purcell*, 715 F.2d 561, 563 (11th Cir. 1983).

The district court departed under the Sentencing Guide-lines. The district court notified the parties that it was "considering departing from the guidelines range calculated in the [presentence investigation report]," as it was required to do. *Hall*, 965 F.3d at 1295–96. Jones and the government briefed the issue, contesting the extent and seriousness of Jones's prior convictions. Although the district court did not refer to a departure during Jones's sen-tencing hearing, it did not refer to a variance either. But the district

court stated, in its statement of reasons supporting its sentence, that it was departing upward based on section 4A1.3 of the Guidelines.

When the district court decides to depart upward for a defendant who has the maximum criminal history category of VI, the district court may increase the offense level. U.S.S.G. § 4A1.3(a)(4)(B). "[T]he [district] court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." *Id.* But the district court "need not explicitly discuss [its] reasons for bypassing incremental offense level sentencing ranges." *United States v. Dixon*, 71 F.3d 380, 383 (11th Cir. 1995). Because the district court is exercising "its discretion in determining which offense level corresponds to the appropriate sentencing range," we review the extent of the departure "for reasonableness based on findings by the district court as to (1) why the extent and nature of the defendant's criminal history warrants an upward departure from category VI, and (2) why the sentencing range within which the defendant is sentenced is appropriate to the case." *Id.*

Sentencing errors that defendants preserve for appeal are reviewed for harmless error. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). Under the harmless error standard, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). So, "[t]o find

harmless error, we must determine that the error did not affect the substantial rights of the parties." *Paz*, 405 F.3d at 948.

The failure of the district court to provide a step-by-step explanation of its departure is harmless. The district court considered Jones's presentence investigation report, the parties' briefs, and their arguments in determining the extent of the upward departure. Jones's presentence report assigned him an offense level of 17, but the report provided that Jones faced an offense level of 24 in the event his "Manslaughter conviction . . . was for Voluntary Manslaughter." And the government argued that Jones's manslaughter was intentional instead of reckless. A criminal history category of VI and an offense level of 24 results in an advisory guideline range of 100 to 125 months of imprisonment. U.S.S.G. ch. 5, pt. A. The reliance of the district court on these materials suggests it was aware of the differences in offense levels and the requirement that it consider those levels incrementally. The district court was not required to "discuss its reasons for bypassing" levels 18 through 23. *See Dixon*, 71 F.3d at 383. So the failure of the district court to provide a step-by-step explanation of its departure did not affect Jones's substantial rights. *See Paz*, 405 F.3d at 948.

The district court reasonably departed upward 49 months from the high end of Jones's recommended sentencing range under section 4A1.3. Jones's "criminal history category substantially under-represent[ed] the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes . . . ." U.S.S.G. § 4A1.3(a)(1). Jones's criminal history points exceed the 13 points

required for the maximum criminal history category of VI. Jones is a persistent recidivist, having accumulated six convictions involving firearms since the age of 17. Jones's crimes were serious because, as the district court stated, he had used a firearm "to shoot somebody." *See* U.S.S.G. § 4A1.3 n.2(B) ("[T]he court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record."). His conviction for manslaughter stemmed from a woman being killed while he was in a gun battle with an adversary, and he shot into an occupied vehicle on two separate occasions. Neither the terms of imprisonment Jones served for his convictions or being on supervised release deterred him from committing crimes. We cannot say that the district court abused its discretion by sentencing Jones to 112 months of imprisonment.

We **AFFIRM** Jones's sentence.