[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13542

_____

D.C. Docket No. 8:19-cr-00005-WFJ-AAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO ALBERTO MONTENEGRO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 11, 2021)

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

BRANCH, Circuit Judge:

Mario Alberto Montenegro appeals the district court's application of a

firearms enhancement over both parties' objections, pursuant to U.S.S.G.

§ 2D1.1(b)(1),[1] to his total 62-month sentence for (1) conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(ii), and (2) possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii).  He argues that in objecting to the firearms enhancement, the government ceded that it did not meet its burden of proving that the firearm was used in connection with his offenses.  After careful consideration, we affirm the district court.

## I.    Background

Mario Alberto Montenegro was indicted by a grand jury and subsequently pleaded guilty to one count of conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine and one count of possession with intent to distribute 500 grams or more of cocaine.

According to the presentence investigation report ("PSI"), Montenegro sold 58 grams of cocaine to an undercover officer on November 13, 2018.  The sale took place at Montenegro's residence, a small trailer.  On December 12, 2018, Montenegro sold another 1,994 grams of cocaine to the undercover officer after they met outside a store.  The undercover officer arrested Montenegro after the

---

[1] U.S.S.G. § 2D1.1(b)(1) provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels."

sale.  Following Montenegro's arrest, Drug Enforcement Administration ("DEA")

agents obtained a warrant, searched his residence, and found a .22-caliber bolt

action rifle on the trailer dashboard, close to the bed; a drug ledger on the kitchen

table, which was also near the bed; a box of .22-caliber bullets in a cabinet; and

another 811 grams of cocaine.  On January 3, 2019, a grand jury indicted

Montenegro for possession with intent to distribute 500 grams or more of cocaine

and conspiracy to possess with intent to distribute 500 grams or more of cocaine.

Using the 2018 United States Sentencing Guidelines, the probation office

prepared the PSI and calculated Montenegro's base offense level as 26, pursuant to

U.S.S.G. § 2D1.1(a)(5).[2]  The probation office applied a two-level enhancement

for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b)(1), due to

"the loaded 22-caliber bolt action rifle that was possessed in [Montenegro's]

residence with 811 grams of cocaine and a drug ledger."[3]  Montenegro also

---

[2]  The drug quantity conversion table included in U.S.S.G. § 2D1.1 provides that when, as here, the offense involved at least 2 kilograms but less than 3.5 kilograms of cocaine, the base offense level is 26.  Montenegro's offense involved 2.863 kilograms of cocaine.

[3]  Based on the application of the firearms enhancement, the probation office determined that Montenegro did not qualify for an additional two-level reduction under the safety-valve provision of U.S.S.G. § 2D1.1(b)(18).  The district court did not explicitly rule on the application of the safety valve, but it implicitly adopted the PSI by sentencing Montenegro within the recommended guidelines range and not applying a safety-valve reduction.  At sentencing, Montenegro objected to the district court's implicit denial of the safety-valve.  As we explained in *United States v. Carillo-Ayala*, the application of a § 2D1.1(b)(1) enhancement does not necessarily mean that safety-valve relief is unavailable.  713 F.3d 82, 91 (11th Cir. 2013).

On appeal, Montenegro asks that if we remand for resentencing, we direct the district court to consider the application of the safety valve.  Although Montenegro did properly preserve the issue below, he only raises the potential safety-valve error in one sentence in his initial brief.

received a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.  Thus, the PSI showed his total adjusted offense level was 25.  Together with his criminal history category of I, Montenegro's advisory guidelines range was 60–71 months' imprisonment.[4]

Prior to sentencing, Montenegro and the government both objected to the application of the firearms enhancement in the PSI, arguing that there was not an established nexus between the rifle's presence in Montenegro's trailer and the crime.  The probation office responded to and disagreed with the parties' objections in the addendum to the PSI, explaining as follows:

> The probation office maintains that the enhancement at USSG §2D1.1(b)(1) is applicable in this case.  According to USSG §2D1.1(b)(1), if a dangerous weapon (including a firearm) was possessed, increase by two levels.  Further, according to USSG §2D1.1, Application Note 11(A), the enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  In this

Consequently, Montenegro has waived this argument on appeal because he failed to "plainly and prominently" raise it by "devoting a discrete section of his argument" to the claim.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (quoting *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013), *abrogated on other grounds by Nasrallah v. Barr*, 140 S. Ct. 1683 (2020)).  As we have explained, "simply stating that an issue exists, without further argument or discussion," as Montenegro has done, "constitutes abandonment of that issue and precludes our considering the issue on appeal." *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009).  Montenegro does address the safety valve in slightly more detail in his reply brief, but we do not consider arguments presented for the first time in an appellant's reply brief. *See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008); *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994).  Additionally, we note that the relief Montenegro asks for—that on remand for resentencing, the district court rule on the safety valve in the first instance—is unavailable because we affirm the district court's sentence.

[4] The advisory guidelines range was 57 to 71 months' imprisonment, but because Montenegro's offenses carried a statutory minimum term of 60 months' imprisonment, the bottom of the guidelines range was increased from 57 to 60 months' imprisonment.

case, at the time of the execution of the search warrant, agents located a 22-caliber bolt action rifle bearing serial number 11530414, on the dash of the trailer, next to the bed. The rifle had one round loaded in the chamber and round in the magazine. A drug ledger was located on the kitchen table next to the bed of the trailer, a box of 22 caliber bullets in a cabinet, and 811 grams of cocaine. The defendant was residing in this travel trailer and he sold 58 grams of cocaine to an undercover officer from this residence on November 13, 2018. Therefore, the probation office contends that it is not clearly improbable that the weapon was connected with the offense, and the two-level enhancement at USSG §2D1.1(b)(1) is applicable.

At sentencing, the district court overruled the parties' objections to the firearm enhancement, finding that there was a sufficient nexus between the rifle and Montenegro's drug sales because (1) the first sale to the undercover officer took place at Montenegro's "very small trailer" where the rifle was located; (2) Montenegro was using the trailer as his "stash house" where he kept cocaine and people knew he sold drugs out of his trailer; and (3) there was a drug sales ledger in "very close proximity" to the gun. Accordingly, the district court adopted the PSI, finding that the applicable guidelines range was 60 to 71 months' imprisonment.

Montenegro requested a sentence of five years' imprisonment, and the government stated that it was "seeking a guideline sentence."[5] The district court explained that after considering the advisory guidelines and the 18 U.S.C. § 3553(a) factors, a sentence consisting of concurrent terms of 62 months'

---

[5] Montenegro noted that, if the district court had not applied the firearms enhancement and had awarded him safety-valve relief, it would have "put him at three years" imprisonment.

imprisonment was appropriate. Montenegro again objected to the application of the firearms enhancement. This appeal followed.

## II.   Standard of Review

"We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts *de novo*." *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (quotation omitted). "For a factual finding to be clearly erroneous, we must be left with a definite and firm conviction that the court made a mistake." *United States v. Tejas*, 868 F.3d 1242, 1244 (11th Cir. 2017).

## III.   Discussion

The main focus of Montenegro's appeal is that the government, in objecting to the firearms enhancement, admitted that it had no evidence Montenegro "used this old bolt action rifle for any purpose that would relate to the underlying offense." Accordingly, Montenegro argues that the district court clearly erred in applying the firearms enhancement to him because it relied on speculation to conclude that there was a nexus between the rifle and his drug sales. Specifically, he asserts that the facts on which the district court relied—that Montenegro's first drug sale occurred at the trailer; that he used the trailer as a "stash house," and that people knew Montenegro sold drugs out of his home; and that the rifle was in close proximity to the drug ledger—do not by themselves create a nexus. Throughout,

6

he analogizes the facts of his case to *United States v. Stallings*, 463 F.3d 1218 (11th Cir. 2006), and urges us to reach the same conclusion—that the government failed to meet its burden in justifying the enhancement.  We disagree.

A drug-trafficking offender is subject to a two-level sentencing enhancement "[i]f a dangerous weapon (including a firearm) was possessed."  U.S.S.G. § 2D1.1(b)(1).  The U.S.S.G. commentary further explains that "[t]he enhancement for weapon possession . . . reflects the increased danger of violence when drug traffickers possess weapons.  The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  *Id*. at cmt. n.11(A).

To justify a firearms enhancement, the government must establish by a preponderance of the evidence either (1) that a "firearm was present at the site of the charged conduct," or (2) "that the defendant possessed a firearm during conduct associated with the offense of conviction."  *Stallings*, 463 F.3d. at 1220.  The government must show "some nexus beyond mere possession between the firearms and the drug crime."  *Id*. at 1221.  However, the government is not required to prove that the firearm was used to facilitate the distribution of drugs for the firearms enhancement to apply; its mere presence during the drug offense is sufficient.  *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001).  Evidence of "proximity between guns and drugs, without more, is sufficient to

7

meet the government's initial burden under § 2D1.1(b)(1)." *United States v. Carillo-Ayala*, 713 F.3d 82, 91–92 (11th Cir. 2013). We have also explained that:

> other facts, such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, [but] there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened. The firearm's *potential* use is critical.

*Id*. at 92.

If the government meets its initial burden, the burden then shifts to the defendant to show "that a connection between the weapon and the offense was clearly improbable." *Stallings*, 463 F.3d at 1220 (quotation omitted). As we explained in *Carillo-Ayala*, "the § 2D1.1(b)(1) enhancement . . . places a heavy burden of negation on the defendant." 713 F.3d at 90.

Here, the government has met its burden by producing evidence that the rifle was present at the site of the drug possession charge. The undisputed facts in the PSI show that Montenegro sold more than two kilograms of cocaine to an undercover officer; that the first sale occurred in Montenegro's trailer home; and that during the search of his trailer home, officers found more cocaine, a drug ledger, and a loaded rifle. *See United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir. 1998) (affirming application of firearms enhancement where a firearm was found in an office of a warehouse and drug transactions took place "nearby in and around the warehouse"); *United States v. Hall*, 46 F.3d 62, 64 (11th Cir. 1995)

8

(affirming application of enhancement when firearm was possessed during the drug offense, as shown by the proximity of the handgun to several drug-related objects located in the house where conversations concerning drug-trafficking activity occurred).

With the government having established a nexus between Montenegro's drug offenses and the rifle, the burden then shifted back to Montenegro to negate any possible connection. At sentencing, Montenegro argued that the enhancement should not apply because there was no evidence that the rifle had been present in his trailer home during the November 13, 2018 sale and that the rifle was in his trailer for hunting purposes only. In so arguing, he failed to meet his burden to negate the nexus presented by the government.

First, presenting another reason for why the rifle may have been present in Montenegro's trailer home does not establish that it was clearly improbable that the rifle was also possessed in connection with his drug offenses. The gun may have been used for hunting, but a gun, after all, has many different uses and one use does not exclude the others. *See, e.g.*, *United States v. Delgado*, 981 F.3d 889, 903 (11th Cir. 2020) (noting with approval the district court's observation that "firearms can have more than one purpose," including availability to protect the defendant or his stash of drugs).

9

Second, Montenegro's argument that there is no evidence that he had the gun with him during the drug transactions fails because it ignores a key fact: Montenegro was indicted for *possession* of cocaine with intent to distribute, not for distributing cocaine. The rifle was located in his trailer home along with cocaine and a drug sales ledger. Thus, the rifle was present at the site of the charged conduct, even if the rifle was not present at either drug sale. *See, e.g.*, *id.* at 902–03 (finding that application of enhancement was proper when defendant was charged with importation of controlled substances and several firearms were found at his home—the intended destination for the shipments of illegal substances—in the same place as digital scales and another illegal substance).

Accordingly, Montenegro does not satisfy the "heavy burden of negation" placed on him to overcome the application of the firearms enhancement. *Carillo-Ayala*, 713 F.3d at 90. In light of the record, the district court's factual findings related to the firearms enhancement were not clearly erroneous, and the district court did not err in applying the enhancement.

Montenegro nonetheless argues that the government failed to meet its burden because, prior to sentencing, it agreed with him that the firearms enhancement should not be applied. As an initial matter, the district court—not the government—applies the guidelines and determines the appropriate sentence. *See United States v. Boyd*, 975 F.3d 1185, 1190–91 (11th Cir. 2020) ("It is well-

10

established that only the district court determines the guideline range." (citing

*Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016), and U.S.S.G.

§ 1B1.1(a)). Accordingly, the district court may reach a different conclusion from

the parties when it applies the guidelines. And while Montenegro takes issue with

the fact that the government has now reversed course and is arguing for the

application of the firearms enhancement, he cites to no caselaw holding that the

government is bound by a position that it took prior to sentencing.

Montenegro also relies on *Stallings* to challenge whether the government

met its burden of proof for the application of the firearms enhancement. In

*Stallings*, the district court applied a firearms enhancement after the police found

three firearms in one of the defendants' homes. 463 F.3d at 1220. We vacated the

firearms enhancement because there was no evidence that any activities related to

the drug conspiracy occurred at the home in question, there was no evidence that

the defendant possessed the firearms in relation to any of his drug-trafficking

activities, and the government failed to address the possibility that the firearms

could have belonged to another adult in the residence. *Id.* at 1220–21.

The facts of Montenegro's case are different from those in *Stallings* in three

notable ways. First, the ownership of the rifle is not in dispute like the ownership

of the firearms was in *Stallings*. Montenegro was the only resident of the trailer,

and he does not dispute that the rifle belongs to him. Second, the rifle was located

11

at a drug transaction site.  Montenegro's first drug sale to the undercover officer took place at his trailer, where the rifle was later found.  Third, objects related to Montenegro's drug sales—cocaine and a sale ledger—were found in close proximity to the rifle, thus suggesting they are linked.  Thus, given the salient differences between Montenegro's case and *Stallings*, his reliance on *Stallings* is misplaced.

For these reasons, we affirm.

**AFFIRMED.**