[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10091

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROMNEY CHRISTOPHER ELLIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00112-VMC-JSS-1

_____

Before: WILSON, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Romney Christopher Ellis appeals his 58-month sentence imposed for transmitting communications containing threats in interstate commerce and mailing injurious articles. Ellis argues that the district court erred by applying a six-level enhancement to his advisory Sentencing Guidelines range for conduct evidencing an intent to carry out a threat, pursuant to U.S.S.G. § 2A6.1(b)(1). After careful review, we affirm.

## I.

Ellis pled guilty to one count of transmitting communications containing threats in interstate commerce, in violation of 18 U.S.C. § 875(c) (Count One), and one count of mailing non-mailable matter—a non-refrigerated and improperly packaged dead animal—in violation of 18 U.S.C. § 1716(a), (j)(1) (Count Two).

In anticipation of sentencing, a probation officer prepared a presentence investigation report (PSR), that recounted the offense conduct. In July 2019, Ellis, using a return address with a different name than his, mailed a dead rat to his ex-wife, A.E., via the United States Postal Service. The package also contained a blackened rose, a Bible verse, and a letter calling A.E. a racial slur and saying she should be gang raped and forced to eat human feces. Ellis's mailing of the dead rat formed the basis of Count Two.

In the months that followed, Ellis repeatedly sent A.E. threatening and harassing text messages. Many of the messages were sexual in nature. In most of the messages, Ellis used racial slurs and epithets. Several of the messages contained demands that A.E. kill herself; one such message was accompanied by a photograph depicting an individual being shot in the head with a firearm. And several of the messages contained homicidal threats against A.E. and A.E.'s sister. One such message said: "You should have never said 'I do.' Revenge will be served you sweetly and very cold." Doc. 62 at 5.[1] It was accompanied by a photo of A.E.'s sister's residence. In a string of text messages sent in October 2019, Ellis threatened to decapitate A.E. and burn her alive. These October 2019 text messages formed the basis of Count One.

The PSR calculated a base offense level of 12 pursuant to U.S.S.G. §§ 2A6.1(a)(1) and 3D1.2(b). The PSR recommended a six-level enhancement under U.S.S.G. § 2A6.1(b)(1) because the offense involved conduct evidencing an intent to carry out a threat. The PSR stated that the enhancement was warranted based on two acts: the mailing of the dead rat, which displayed an intent to kill A.E., and the text message about revenge accompanied by a photo of A.E.'s sister's residence, displaying an intent to kill A.E.'s sister. The PSR applied an additional two-level enhancement because the offense involved more than two threats, U.S.S.G. § 2A6.1(b)(2)(A), and a three-level reduction for acceptance of responsibility,

---

[1] "Doc." numbers are the district court's docket entries.

U.S.S.G. § 3E1.1. Ellis's total offense level therefore was 17. With a criminal history category of IV based on, among other things, a history of threats against other women including A.E., A.E.'s mother, A.E.'s children, and A.E.'s niece.

Based on a total offense level of 17 and a criminal history category of IV, the PSR calculated a Sentencing Guideline range of 37 to 46 months' imprisonment. The statutory maximum term of imprisonment for Count One was five years' imprisonment. The PSR noted that the government believed an upward departure may be warranted because Ellis's criminal history was substantially underrepresented—he had several convictions, including for threatening conduct against A.E. and others that did not garner criminal history points. *See* U.S.S.G. § 4A1.3(a)(1), (2)(E). Relatedly, the PSR explained that an upward variance may be warranted because Ellis began stalking A.E. years before the criminal conduct that formed the basis of the instant offense occurred.

Ellis objected to the six-level enhancement imposed under U.S.S.G. § 2A6.1(b)(1), arguing that he did not engage in conduct evidencing an intent to carry out a threat. Rather, he argued, his actions "were intended to cause emotional distress for A.E. and nothing more." Doc. 62 at 158. Ellis noted that despite having ample opportunity to carry out the threats he made, he never did so.

The government responded that Ellis's mailing of the dead rat was conduct evidencing his intent to carry out the homicidal threats against A.E. The government also emphasized that Ellis's threatening behavior had escalated over the course of several

years, and that the mailing of the rat along with a graphic, threatening letter demonstrated an escalation in violence and in the concrete nature of the homicidal threat. The district court agreed with the government and overruled the objection, finding that the "overt acts that were carried out . . . show that there is a furtherance of his threats," and that, "tak[ing] the[] messages and the mailings altogether they do evidence an intent to carry out the threat." Doc. 94 at 20.

The district court sentenced Ellis to 58 months' imprisonment with a three-year term of supervised release to follow. This is Ellis's appeal.

## II.

Whether a defendant's conduct evidences an intent to carry out a threat for purposes of U.S.S.G. § 2A6.1(b)(1) raises a mixed question of law and fact. *United States v. Barbour*, 70 F.3d 580, 586 (11th Cir. 1995). We review the district court's factual findings for clear error, and we review *de novo* whether those facts evidence an intent to carry out the threat, a question of law. *Id.*

A fact-finding is not clearly erroneous unless we are left with the "definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (internal quotation marks omitted). A factual finding cannot be clearly erroneous when the factfinder has chosen between two permissible views of the evidence. *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

### III.

Section 2A6.1(b)(1) calls for a six-level guidelines enhancement "[i]f the offense involved any conduct evidencing an intent to carry out [the] threat." U.S.S.G. § 2A6.1(b)(1). Ellis argues that his conduct did not evidence any such threat; rather, he says, his conduct showed only an intent to cause emotional distress. Ellis emphasizes that he took no steps to arm himself or to travel to the state in which A.E. lived to carry out the threats. And, he says, the fact that he made multiple threats over the course of several years without carrying them out demonstrated that he would not carry out the threats in this case. Given the circumstances of this case, we disagree with Ellis.

The enhancement in U.S.S.G. § 2A6.1(b)(1) "is not a general mandate to punish more severely people with bad character or those generally more likely to carry out their threats." *Barbour*, 70 F.3d at 587. "The purpose of the enhancement is to punish more severely the individual whose actions indicate an intent to carry out the threat that serves as the basis for the underlying conviction." *Id.* To sustain the enhancement, the district court must make "findings to support the claim that there was a close nexus between the defendant's acts and his threat." *Id.* A court may consider "pre-threat conduct," "post-threat conduct," *id.*, and "conduct that occurred during the offense," U.S.S.G. § 2A6.1(b)(1) cmt. n.1.

Because there is a risk that pre-threat conduct may lack the required close nexus, *Barbour*, 70 F.3d at 587, the commentary to the Guidelines provides that "conduct that occurred prior to the

offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole," U.S.S.G. § 2A6.1(b)(1) cmt. n.1. "Factors a district court should consider in determining the probative value of pre-threat conduct include . . . the proximity in time between the threat and the prior conduct, the seriousness of the defendant's prior conduct, and the extent to which the pre-threat conduct has progressed towards carrying out the threat." *Barbour*, 70 F.3d at 587. "The essential inquiry for § 2A6.1(b)(1) purposes is whether the facts of the case, taken as a whole, establish a sufficiently direct connection between the defendant's pre-threat conduct and his threat." *United States v. Taylor*, 88 F.3d 938, 943 (11th Cir. 1996).

The district court found that the mailing of the dead rat, together with an explicit, threatening letter and other threatening accoutrements, an escalation in a long history of harassing and threatening conduct toward A.E. and her family members, demonstrated an intent to carry out the homicidal threats Ellis made. We agree. Ellis's mailing of the rat was close in time to his death threats, it was serious, and it represented a progression in menacing conduct towards A.E. *See Barbour*, 70 F.3d at 587.

The mailing of the dead rat was directly connected to the text messages in which Ellis threatened to kill A.E. Although the mailing of the dead rat was pre-threat conduct, it occurred in close temporal proximity—three months—to the text messages that formed the basis of Count One. *See Taylor*, 88 F.3d at 943 (suggesting that an approximately five-month proximity between pre-

threat conduct and the threat was sufficiently close). And during that span of time, Ellis was sending additional threatening text messages to A.E., telling her in four separate text messages to kill herself and threatening "[r]evenge" by suggesting that harm would come to A.E.'s sister. Doc. 62 at 5.

The mailing of the dead rat, along with a blackened rose and harassing letter that used a racial slur, was serious. It also represented a progression tying Ellis's long history of menacing behavior towards A.E. to concrete threats of violence and death.[2] At bottom, we agree with the district court that Ellis's conduct of mailing the dead rat and the subsequent death threats is substantially and directly connected. The mailing of the rat was not a random act performed by Ellis to emotionally disturb A.E., but an overt act consistent with a scheme of threats and violence aimed at her.

In sum, the district court did not err by applying the enhancement.

**AFFIRMED.**

---

[2] We do not consider Ellis's arguments that his history of threats of violence is irrelevant to the application of the sentencing enhancement and that the government failed to present sufficient evidence to support its allegations of prior threatening conduct against A.E. because Ellis raised those arguments for the first time in his reply brief. *United States v. Montenegro*, 1 F.4th 940, 944 n.3 (11th Cir. 2021). Moreover, Ellis relied on his prior threatening conduct toward A.E. to argue in his initial brief that his threats were not escalating, so we decline his reply brief's invitation to do the opposite.